Revised August 6, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 99-41490

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE CLEOTIDE SOLIS, also known as Little Cocho; ECLISERIO MARTINEZ GARCIA; SALVADOR PINEDA CONTRERAS, also known as Chino; FRANCISCO FAVELA, also known as Jr, also known as Big Jr, also known as Dreamer; ALFONZO MEZA; ARTURO MEZA, also known as Jr; HILARIO MERLAN SOLIS, also known as Cocho; AURELIO MENDEZ; JOSE ALBERTO MEZA, also known as Beefy,

Defendants-Appellants.

Appeal from the United States District Court
For the Eastern District of Texas

July 18, 2002

Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This appeal arises from a 36-count indictment of 29 defendants for conspiracy to distribute heroin and cocaine in Plano, Texas and individual violations of 21 U.S.C. § 841(a)(1). Eleven defendants went to trial, ten were convicted of conspiracy and various individual drug offenses, and nine—Jose Cleotide Solis, Ecliserio

Martinez Garcia, Salvador Pineda Contreras, Francisco Favela, Alfonzo Meza, Arturo Meza, Hilario Merlan Solis, Aurelio Mendez, and Jose Alberto Meza—now appeal their convictions and sentences.

## I. *Factual background*

In September 1997, a concerted effort by local and federal law enforcement agencies to apprehend heroin traffickers in Plano, Texas led to the formation of the Plano Heroin Task Force. The government's investigation determined that in late 1996 Aurelio Mendez and Ecliserio Martinez Garcia were part of a conspiracy to import heroin from Guerrero, Mexico, where it was manufactured, to North Texas. Mendez and Garcia sold the heroin to Hilario Merlan Solis. Hilario's brother Jose Cleotide Solis then distributed the heroin until he was arrested on July 9, 1997.

Among Hilario's customers was Alfonzo Meza. Alfonzo lived at 1120 Avenue I in Plano, which became known as the "blue house," with his brother Jose Alberto Meza and several friends including Francisco Favela and Santiago Mejia. These individuals, along with Alfonzo's and Jose's brother Arturo Meza, sold heroin from the blue house.

*Search of Alfonzo Meza's house on May 14, 1997*

On May 14, 1997, officers arrived at the blue house holding an arrest warrant for Jose Meza. At the same time, building inspectors accompanied by two other Plano Police officers arrived at the blue house. The inspectors intended to condemn the house

for housing code violations. After the officers with the warrant searched the house for Jose and found that he was not present, a police officer approached Alfonzo Meza outside the house and asked if there were any weapons inside. Alfonzo replied that there was a .45-caliber pistol on a shelf in his bedroom and consented to the officer's retrieving the gun. However, when the officer could not reach the gun without assistance, an accompanying officer moved a cooler from across the room for the officer to stand on. On moving the cooler, the accompanying officer noticed a baggie containing what appeared to be heroin capsules. After retrieving the gun, the officers re-approached Alfonzo and received consent to search the entire house. The blue house was thereafter condemned.

*Aftermath of the search and condemnation of Alfonzo Meza's house*

After the blue house was condemned, Mejia, Favela and others sold heroin and cocaine from hotel rooms, using Jose Solis as their source until Jose's arrest in July 1997. Hilario Solis then introduced Salvador Contreras Pineda as the source for these individuals' drugs.

*State court convictions of Favela and Alfonzo Meza*

On September 18, 1997, Favela was arrested in a hotel room with cocaine and heroin. He pled guilty to possession with intent to deliver more than 4 grams but less than 200 grams of heroin, possession of less than 1 gram or heroin, possession with intent to deliver more than 4 grams but less than 200 grams of cocaine, and

3

possession of less than 1 gram of cocaine in Texas state court and was sentenced to 20 years imprisonment.

Alfonzo Meza was likewise convicted on April 6, 1998 in Texas state court of two counts of delivery of cocaine, one count of possession with intent to deliver cocaine, and one count of possession with intent to deliver heroin. He was sentenced to concurrent 15-year terms on each of the four counts.

*Search of Salvador Pineda's house on November 23, 1997*

Pineda lived in a house at 211 Walnut Street in McKinney, Texas, with his wife and Garcia and Garcia's wife. On November 23, 1997, Pineda and Garcia were arrested away from their house. Police officers then arrived at 211 Walnut Street and obtained consent from Pineda's wife to search the residence and the outbuildings behind the house.

*Convictions of Salvador Pineda and Ecliserio Martinez Garcia*

Pineda pled guilty on March 3, 1998 to possession with intent to distribute heroin and, on June 25, 1998, was sentenced to a term of imprisonment of 125 months. Garcia pled guilty on March 13, 1998 pursuant to a written plea agreement with the government and was sentenced to a term of imprisonment of 120 months.

*Statement of Jose Meza on March 26, 1998*  Jose Meza was arrested on March 26, 1998 and promptly gave a videotaped confession to the police.

4

*Indictment in the present case*

On June 24, 1998, the Federal Grand Jury for the Eastern District of Texas returned a 36-count indictment charging 29 defendants. Count 1 charges a conspiracy from an unknown date until December 1997 to distribute heroin and cocaine in violation of 21 U.S.C. § 846. Counts 2-7, 9, 12-16, and 18-28 charge various defendants with distribution of or possession with intent to distribute heroin or cocaine or both in violation of 21 U.S.C. § 841(a)(1). Counts 6, 9, 12, 16, and 27 also charge that a user of the drugs died or suffered serious bodily injury from the use of the drugs.

Thereafter, Mendez was arrested on July 22, 1998, and his house was searched. The following day, the co-conspirators named in the indictment who were not already in custody were arrested in a multi-agency drug sweep.

*Course of proceedings in the district court*

On December 17, 1998, the district court denied, *inter alia*, Pineda's and Alfonzo Meza's motions to suppress evidence seized from their residences; Jose Meza's motion to suppress his videotaped confession; Garcia's, Jose Meza's, Alfonzo Meza's, and Favela's motions to dismiss the indictment; and Mendez's motion to sever. The district court allowed each defendant to join in other defendants' motions and objections without an additional filing.

The defendants also filed motions to strike surplusage in the indictment, specifically any reference to heroin deaths or injuries set forth in Counts 6, 9, 12, 16, and 27 and Count 1's Overt Acts 7, 10, 13, and 34.  They also requested that the district court limit the government's proof at trial to evidence of possession, distribution, and manufacture of controlled substances and other statutory violations.  The district court granted these requests and struck the language from the indictment.

Trial began on February 3, 1999.  The district court denied motions for acquittal by Jose Solis, Garcia, Pineda, Favela, Alfonzo Meza, Arturo Meza, Hilario Solis, Mendez, and Jose Meza on February 22, and, on February 25, the following verdict was returned:

| | |
|---|---|
| Jose Solis | guilty on Count 1-3, 6-7 |
| Garcia | guilty on Counts 1, 6, 9, 12, 14-15, 18-28 |
| Pineda | guilty on Counts 1, 6, 9, 12, 14-15, 18-25, 27-28 |
| Favela | guilty on Counts 1, 4-5, 13 |
| Alfonzo Meza | guilty on Counts 1-6, 12, 27<br>acquitted on Count 9 |
| Arturo Meza | guilty on Counts 1, 4-6, 9, 12, 27 |
| Hilario Solis | guilty on Counts 1, 6, 9, 12 |
| Mendez | guilty on Counts 1, 6, 9, 12, 27 |
| Jose Meza | guilty on Counts 1, 4-5, 12, 27<br>acquitted on Counts 6, 9 |

On December 7-8, 1999, the district court held a hearing on the causes of death and serious bodily injury as a result of the

use of heroin and cocaine distributed by the defendants and on the applicability of U.S.S.G. § 2D1.1(a)(2). The government presented testimony from medical examiners as to the causes of death of the individuals the government alleged died as a result of the sale of drugs charged in Counts 6, 9, 12, and 27. The district court found by a preponderance of the evidence that heroin caused the deaths of three of the individuals—Milan Malina (Count 6), George Wesley Scott (Count 9), and Rob Hill (Count 12)—and that heroin and cocaine together caused the death of Erin Baker (Count 27) and the serious bodily injury to Daniel Mierek (Count 16).

On December 8, 1999, the district court imposed the following sentences on Garcia, Pineda, Favela, and Mendez:

| | |
|---|---|
| Garcia | life imprisonment on Counts 1, 6, 9, 12, 27<br>480 months on Counts 26, 28<br>240 months on Counts 14-15, 18-25 |
| Pineda | life on Counts 1, 6, 9, 12, 27<br>480 months on Count 28<br>240 months on Counts 14-15, 18-25 |
| Favela | 140 months on Counts 1, 4, 5, 13 |
| Mendez | life on Counts 1, 6, 9, 12, 27 |

On December 9, 1999, the district court imposed the following sentences on Jose Solis, Alfonzo Meza, Arturo Meza, Hilario Solis, and Jose Meza:

| | |
|---|---|
| Jose Solis | 240 months on Counts 1-3, 6-7 |
| Alfonzo Meza | 360 months on Counts 1, 6, 12, 27<br>240 months on counts 2-5 |
| Arturo Meza | 360 months on Counts 1, 6, 9, 12, 27<br>240 months on Counts 4-5 |

7

|                |                                  |
|----------------|----------------------------------|
| Hilario Solis  | 400 months on Counts 1, 6, 9, 12 |
| Jose Meza      | 360 months on Counts 1, 12, 27   |
|                | 240 months on Counts 4-5         |

The district court ordered each defendant's sentences to run concurrently.

All nine defendants have timely appealed their convictions and sentences. We address the defendants' challenges in turn.

II. *Challenges to the defendants' convictions*

A. *Motions to dismiss on grounds of double jeopardy and violation of plea agreement*

1.

Garcia argues that the district court erred in denying his motion to dismiss on grounds that the prosecution violated his plea agreement in an earlier case. He claims that his earlier guilty plea barred this prosecution because the government agreed not to charge him for acts which he committed prior to the date of the plea agreement and which he disclosed to the government, provided they were not crimes of violence or violations of Title 26 of the United States Code.

We review *de novo* the legal question of whether the government's conduct violates the terms of the plea agreement,[1] but Garcia bears the burden of proving the facts establishing a breach of the agreement—specifically, paragraph 9 providing that the

---

[1] *United States v. Valencia*, 985 F.2d 758, 760 (5th Cir. 1993).

8

government agrees "[n]ot to charge Defendant with any other criminal violations concerning activities committed prior to the date of this agreement which the Defendant makes known to the United States and which did not involve crimes of violence or Title 26 offenses"—by a preponderance of the evidence.[2] The uncontroverted evidence offered at the hearing on Garcia's motion established that Garcia did not disclose the crimes for which he is charged within the instant indictment. Garcia did not prove that the government breached paragraph 9 of his plea agreement by indicting Garcia in cause number 4:98-CR-47. We affirm the district court's denial of Garcia's motion to dismiss on these grounds.

2.

Pineda argues that the district court erred in denying his motions to dismiss the indictment on double jeopardy grounds because his indictment in an earlier case barred this prosecution for possession with intent to distribute heroin.[3]

"[W]hether a prosecution violates the Double Jeopardy Clause of the Fifth Amendment is a question of law and is reviewed de novo," but the district court's factual findings are reviewed only

---

[2] *United States v. Saling*, 205 F.3d 764, 766 (5th Cir. 2000).

[3] Garcia raised a similar argument before the district court, which he has not renewed on appeal, although he has generally moved to adopt his co-defendants' argument pursuant to Federal Rule of Appellate Procedure 28(i). He may not, however, adopt Pineda's argument on appeal because it is necessarily fact-specific. *See United States v. Baptiste*, 264 F.3d 578, 586 n.6 (5th Cir. 2001) ("FRAP 28(i) permits appellants to do so for challenges that are not fact-specific as to a particular defendant.").

for clear error.[4]  Pineda's challenge to the indictment fails. Pineda may be charged with conduct in a conspiracy count, as overt acts, in the instant indictment (4:98-CR-47) for criminal conduct of which he has previously been convicted under a different indictment (4:98-CR-3) under 21 U.S.C. § 841(a)(1).[5]  Even to the extent conduct charged in Counts 1, 19-21, 23-25, and 28 of the instant indictment was used as relevant conduct in sentencing Pineda in cause number 4:98-CR-3, there is no violation of the Double Jeopardy Clause in the indictment for this conduct in the instant cause.  Moreover, the sentences imposed on Pineda in the two cases run concurrently.[6]

"Collateral estoppel completely bars a subsequent prosecution only when a fact 'necessarily determined' in the first prosecution is an essential element of the offense charged in the subsequent prosecution."[7]  The facts necessary to the determination of Pineda's guilt for possession with intent to distribute heroin in cause number 4:98-CR-3 are not essential elements of the conspiracy charge in Count 1 of the instant indictment, even if alleged

---

[4]  *United States v. Delgado*, 256 F.3d 264, 270 (5th Cir. 2001).

[5]  *See United States v. Brackett*, 113 F.3d 1396, 1400 n.6 (5th Cir. 1997); *United States v. Deshaw*, 974 F.2d 667, 676 (5th Cir. 1992); *United States v. Marden*, 872 F.2d 123, 125 (5th Cir. 1989).

[6]  *See United States v. Wittie*, 25 F.3d 250, 254-61 (5th Cir. 1994).

[7]  *Brackett*, 113 F.3d at 1399.

10

therein as overt acts.[8]  The court did not err in denying Pineda's motion to dismiss.

3.

Favela argues that the district court erred in denying his motion to dismiss Counts 1, 4, 5, and 13 of the indictment on double jeopardy grounds.  He argues that he pled guilty in an earlier prosecution in state court to the exact transactions listed in Overt Acts 5, 6, and 16 in Count 1 of the instant indictment and that his prior conviction in state court is for the same alleged criminal conduct listed in Counts 1, 4, 5, and 13, all requiring the same elements, except for the conspiracy charge in Count 1. Favela argues that his claim is excepted from the dual sovereignty doctrine because of the comprehensive interaction between the state and federal agencies involved in his arrest.[9]

It is well-established that, "[u]nder the dual sovereignty doctrine, successive prosecutions by separate sovereigns for crimes arising out of the same acts are not barred by the Double Jeopardy Clause," unless "'prosecution by one sovereign is used as a tool for successive prosecution by another sovereign.'"[10]  However,

---

[8]  *Cf. id.* at 1399-1400.

[9]  Alfonzo Meza raised the same argument before the district court, which he has not renewed on appeal, although he has generally moved to adopt his co-defendants' argument pursuant to Rule 28(i).  He may not, however, adopt Favela's argument on appeal because it is necessarily fact-specific.  *See Baptiste*, 264 F.3d at 586 n.6.

[10]  *United States v. Johnson*, 91 F.3d 695, 697 (5th Cir. 1996) (quoting *United States v. Lanza*, 260 U.S. 377, 382 (1922)).

"[w]hen a defendant claims collusion between federal and state law enforcement officials, the defendant has the burden of producing evidence to show a *prima facie* double jeopardy claim."[11] The district court's determination of whether the defendant has come forward with evidence to show a *prima facie* case of "collusion between the federal and state government" is a factual finding we review only for clear error.[12]

Favela's double jeopardy claim is without merit. Under the dual sovereignty doctrine, there is no double jeopardy violation in any overlap that may exist between Favela's state court drug convictions and substantive counts or overt acts charged in the instant indictment. Favela has not established any clear error in the district court's finding that there was no collusion between the federal and state prosecutors in this case or, more specifically, that there was no evidence that the state prosecution of Favela was merely a tool of the federal authorities. The district court did not err in denying Favela's motion to dismiss.

B. *Motions to suppress the fruits of consent searches*

In reviewing the denial of the defendant's motion to suppress, we review the district court's factual findings, including its credibility choices, for clear error and its legal conclusions *de*

---

[11] *United States v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995).

[12] *Id.*

12

*novo*.[13]  "We view the evidence in the light most favorable to the party that prevailed in the district court," here the government.[14]

A search conducted pursuant to consent is excepted from the Fourth Amendment's warrant and probable cause requirements.[15]  "In order to satisfy the consent exception, the government must establish that consent to search was freely and voluntarily given and that the individual who gave consent had authority to do so" and "must prove by a preponderance of the evidence that consent was voluntary and effective."[16]  Additionally, "the government has the burden of proving that the search was conducted within the scope of the consent received."[17]

Consent need not be given by the defendant himself.  "In the context of searches, it is well established that the police may conduct a warrantless search of an area without running afoul of the Fourth Amendment if a third party with common control over the area consents to the search."[18]

"The voluntariness of consent is a question of fact to be determined from a totality of the circumstances," and we review the

---

[13]  *United States v. Hunt*, 253 F.3d 227, 229-30 (5th Cir. 2001).

[14]  *Id.* at 230.

[15]  *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997).

[16]  *Id.*

[17]  *United States v. Wilson*, 36 F.3d 1298, 1304 (5th Cir. 1994).

[18]  *United States v. Hernandez-Zuniga*, 215 F.3d 483, 487 (5th Cir.), *cert. denied*, 531 U.S. 1038 (2000).

13

district court's finding of voluntariness for clear error.[19] "'Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses.'"[20] This court considers six factors in evaluating the voluntariness of consent to search, all of which are relevant, but no one of which is dispositive or controlling.[21] The consent, however, may not be given "simply in acquiescence to a claim of lawful authority."[22]

1.

Pineda argues that the district court erred in denying his motion to suppress the evidence found in the warrantless search of his house and the outbuildings behind his house on November 23, 1997, based on the allegedly invalid consent obtained from Pineda's wife.

Pineda first contends that his wife's consent was involuntarily given. The district court, after hearing conflicting

---

[19]  *United States v. Cooper*, 43 F.3d 140, 144 (5th Cir. 1995).

[20]  *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) (quoting *United States v. Sutton*, 850 F.2d 1083, 1086 (5th Cir. 1988)).

[21]  *Id.* ("In evaluating the voluntariness of consent, we have considered six factors: '(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.'" (quoting *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988))).

[22]  *United States v. Lopez*, 911 F.2d 1006, 1010 (5th Cir. 1990).

testimony at a suppression hearing, found that: Pineda's wife was not placed under arrest prior to, or coerced into, signing the form; an INS agent explained the form to Pineda's wife in Spanish and advised her of her rights to refuse consent and to require a search warrant; Pineda's wife was not threatened or promised anything and did not appear to be distraught; Pineda's wife cooperated in the search and pointed out heroin in a closet; based on the court's observations at the hearing, she was intelligent enough to know what was being asked of her; and she was aware that incriminating evidence was at the house because she pointed heroin out herself. Viewing the evidence in the light most favorable to the government, and giving due deference to the credibility determinations of the district court, we conclude that the district court did not clearly err in its findings and that, under the totality of the circumstances, the district court did not err in concluding that Pineda's wife's consent was voluntarily given.

Pineda also argues that the government failed to prove that his wife had authority to give consent to search the house and the outbuildings. He argues that the record does not support the government's reliance on her joint access or control over the residence and outbuildings or that the officers reasonably believed that she was authorized to consent. The district court found that Pineda's wife has authority to consent to the search of the house and outbuildings, because she lived there with her husband and mutually used the property and had joint access to and control over

15

it. Based upon our review of the record as a whole, we conclude that the district court's findings are not clearly erroneous and that, at the very least, the circumstances surrounding Pineda's wife's giving consent to search are such that reasonable officers could have believed that she was authorized to consent to a search of her marital residence.[23] Accordingly, we affirm the district court's denial of Pineda's motion to suppress.

2.

Jose Meza argues that the district court erred in denying a motion to suppress evidence taken from Alfonzo Meza's house—the "blue house"—in a search on May 14, 1997. We note that Alfonzo Meza filed the motion to suppress the fruits of this search, not Jose Meza. On appeal, the issue of the district court's alleged error in denying the motion to suppress the drugs, guns, and other evidence recovered from the house is specifically raised only by Jose Meza. Jose Meza's argument on appeal may be adopted by Alfonzo Meza through Rule 28(i), because the facts are not specific to Jose Meza vis-à-vis Alfonzo Meza and because Alfonzo clearly has standing to challenge the search of his residence. We conclude, in any event, that neither defendant is entitled to relief on this point of error.

To begin with, contrary to Jose Meza's contention, the police did not require probable cause or a warrant to ask Alfonzo Meza

---

[23] *See Gonzales*, 121 F.3d at 938.

16

whether any weapons were located in the house, where there is no indication that asking him this question amounted to a Fourth Amendment seizure.[24]  Nor was probable cause required once the officers obtained Alfonzo Meza's consent to seize the gun he identified as being in his bedroom on a shelf.[25]

Jose Meza argues that Alfonzo Meza's consent to a search for the gun he identified was not given freely and voluntary.  In support of this claim, Jose Meza notes that: seven police officers were present, constituting a show of force and grounds for assuming that the search was inevitable; the police officer asked Alfonzo about weapons only after the officers serving the arrest warrant for Jose Meza searched the house and did not find Jose; Alfonzo was never read a *Miranda* warning before being asked about weapons; Alfonzo was never advised that he had the right to refuse consent to search for the gun; and there is no evidence that ownership of the gun in his house was illegal.

We note first that many of these observations cut in favor of a finding of voluntariness.  For example, that Alfonzo was not in custody and that the police were not required to read him a *Miranda* warning.[26]  Moreover, while "knowledge that incriminating evidence would be found does not necessarily weigh against a finding of

---

[24]  *See Cooper*, 43 F.3d at 145.

[25]  *See United States v. Muchaca-Barrera*, 261 F.3d 425, 435 n.33 (5th Cir. 2001).

[26]  *See United States v. Tompkins*, 130 F.3d 117, 122 (5th Cir. 1997).

17

voluntary consent,"[27] the absence of an obvious crime in the ownership of a gun certainly does not render consent involuntary. Further, we have held consent to be voluntary even in the face of greater shows of force than the presence here of seven officers, some in uniform and none with weapons drawn or displaying force beyond their presence in numbers.[28] Furthermore, "[w]hile knowledge of the right to refuse consent is one factor in determining voluntariness, the failure to advise an individual of the right to withhold consent is not determinative in and of itself."[29]

We also note that, after hearing testimony at the suppression hearing, the district court found that Alfonzo Meza voluntarily gave oral consent to search the house for the gun. Viewing the evidence in the light most favorable to the government, and crediting the district court's credibility determinations, we conclude that, under the totality of the circumstances, Alfonzo Meza's consent to search for the gun in his room was voluntarily given.

However, having obtained this consent to search and having proceeded to the room where Alfonzo indicated the gun was located on a shelf, an officer accompanying the officer who was given consent to search for the gun moved a cooler over to the shelf to

---

[27] *Id.*

[28] *See Gonzales*, 121 F.3d at 939.

[29] *United States v. Galberth*, 846 F.2d 983, 988 (5th Cir. 1988) (footnote omitted).

18

allow the shorter, searching officer to reach the gun. Jose Meza argues that, in so doing, the police exceeded the scope of the consent to search and violated his Fourth Amendment rights and that this violation tainted the subsequent consent Alfonzo gave to search the entire house.[30] We disagree. The uncontroverted evidence shows that the cooler was moved only in order to effectuate the search for the gun, for which consent was voluntarily given. As such, the officers did not exceed the scope of the consent,[31] and, as the district court found, the heroin found under the cooler was in plain view.[32]

We further conclude that, under the totality of the circumstances, the subsequent consent to search was voluntarily given. The district court, after hearing testimony at the suppression hearing, found that: Alfonzo Meza gave written consent to further search the residence; the consent form informed Alfonzo of his right to refuse consent; Alfonzo was cooperative and was not in custody at the time; there were no coercive police procedures used; and Alfonzo was free to leave and did so. Viewing the evidence in the light most favorable to the government, and giving due deference to the district court's credibility determinations,

---

[30] *See United States v. Vega*, 221 F.3d 789, 801-02 (5th Cir. 2000), *cert. denied*, 531 U.S. 1155 (2001).

[31] *See United States v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996); *United States v. McSween*, 53 F.3d 684, 687 (5th Cir. 1995).

[32] *See United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998).

we conclude that the district court did not clearly err in its findings and that the district court correctly concluded that Alfonzo Meza's consent was voluntarily given.  We hold that the district court did not err in refusing to suppress the fruits of the search of Alfonzo Meza's residence.

C. *Motion to suppress Jose Meza's videotaped confession*

Jose Meza argues that the district court erred in denying his motion to suppress, and thereafter admitting, his videotaped confession of March 26, 1998.  He argues that he was intoxicated when he gave the statement and, as such, despite being given a *Miranda* warning, his confession was not the product of his free and rational choice and he did not freely and voluntarily waive his constitutional rights to counsel and silence.

"In reviewing a ruling on a motion to suppress a confession, we give credence to the credibility choices and fact finding by the district court unless they are clearly erroneous," but "the ultimate issue of voluntariness is a legal question reviewed *de novo*."[33]  Likewise, "a district court's determination regarding the validity of a defendant's waiver of his *Miranda* rights is a question of law reviewed de novo, but this court accepts the factual conclusions underlying the district court's legal determination unless they are clearly erroneous."[34]

---

[33]  *United States v. Mullin*, 178 F.3d 334, 341 (5th Cir. 1999).

[34]  *United States v. Garcia Abrego*, 141 F.3d 142, 171 (5th Cir. 1998).

20

We have rejected a challenge similar to Jose Meza's in *United States v. Garcia Abrego*,[35] wherein the defendant argued that "that the drugs that Mexican officials administered to him, coupled with the solicitousness of U.S. law enforcement officials, rendered his custodial statement involuntary."[36] There, we concluded that "[t]he record contains ample evidence from which the district court could conclude that the drugs that Mexican authorities administered to Garcia Abrego did not impair his mental capacity" and that "Dr. Coleman's testimony that Garcia Abrego did not appear impaired and evinced none of the symptoms of a Valium overdose, together with the testimony of the officers who interviewed Garcia Abrego that he appeared in no way impaired, provided an adequate basis for the district court's conclusion that Garcia Abrego's mental capacity was not impaired as a result of the drugs that he had been administered earlier in the day."[37] We further observed that "the district court was free to accord great weight to the testimony of those individuals who actually observed Garcia Abrego prior to his interview with law enforcement authorities."[38]

Similarly, here, Jose Meza presented his own testimony that he "did some speed" about an hour before being taken into custody and

---

[35]   141 F.3d 142 (5th Cir. 1998).

[36]   *Id.* at 170.

[37]   *Id.*

[38]   *Id.*

21

that he did not remember being arrested or being read a *Miranda* warning. He also testified that he had been arrested and read *Miranda* warnings several times previously and understood his rights each time. Jose Meza also presented the testimony of a licensed chemical dependency counselor who testified that, based on a review of portions of the videotaped statement, Jose Meza appeared to be on some kind of amphetamine.

The government presented the testimony of Billy Meeks, an experienced Plano Police Department detective who interviewed Jose Meza and who had prior dealings with him. Meeks testified that he read Jose Meza a *Miranda* warning and that Jose responded that he understood and that he was willing to talk. Meeks also testified that there was no indication that Jose Meza was under the influence of any controlled substance and that, when asked prior to the interview, Jose Meza stated that he had last used cocaine or heroin eleven days before. Meeks further testified that Jose Meza was not in handcuffs, was not threatened or made any promises, and was aware of questions asked and was responsive.

The district court also viewed portions of the videotape itself. It then found that: the interview took place one hour after arrest; Jose Meza was informed of the charges and read a *Miranda* warning; no coercion was used and no promises were made; and Jose Meza looked alert on the videotape, was lucid and responsive, was quite articulate talking to Meeks and answering

22

Meeks's questions, and appeared to be understanding the conversation, despite occasionally yawning and scratching himself. On the strength of these findings, which we conclude were not clearly erroneous, we conclude that the government proved, by a preponderance of the evidence, that Jose Meza voluntarily confessed and validly waived his Fifth Amendment rights following a *Miranda* warning.[39] As such, we affirm the district court's denial of Jose Meza's motion to suppress his videotaped statement.

D. *Motions to sever*

Joinder of defendants "is proper if co-defendants are alleged to have participated in the same act or transactions constituting the offense."[40] Generally, "persons indicted together should be tried together, especially in conspiracy cases."[41] Under Federal Rule of Criminal Procedure 14, a "[d]istrict court may grant a severance '[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together.'"[42]

---

[39] *See Mullin*, 178 F.3d at 341-42; *Garcia Abrego*, 141 F.3d at 170, 171; *United States v. Andrews*, 22 F.3d 1328, 1337-38 (5th Cir. 1994).

[40] *Burton v. United States*, 237 F.3d 490, 494 (5th Cir. 2000).

[41] *Id.*

[42] *United States v. Matthews*, 178 F.3d 295, 298 (5th Cir. 1999) (quoting FED. R. CIV. P. 14).

23

"We review the denial of a severance motion for an abuse of discretion."[43] Our standards for challenges to a district court's denial of a motion to sever are well-settled: "To prevail, "the defendant must show that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration."[44]

### 1.

Jose Solis argues that the district court erred in denying him a severance because he was forced to trial with his brother, who was charged with numerous overt acts which Jose Solis argues produced a spill-over effect leading to Jose's convictions, and that he was afraid to testify on his own behalf.[45] He argues that he was convicted on guilt by association.[46]

We conclude that the district court did not abuse its discretion in denying a severance for Jose Solis. The grounds raised by Jose Solis do not rise to the level of a serious risk

---

[43] *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir.), *cert. denied*, 122 S. Ct. 133, *and cert. denied*, 122 S. Ct. 142 (2001).

[44] *Id.* (quoting *United States v. Richards*, 204 F.3d 177, 193 (5th Cir.), *cert. denied*, 531 U.S. 826 (2000)).

[45] Jose Solis did not personally file a motion to sever but simply adopted his co-defendants' motions per the district court's order, insofar as they were applicable to him, and then orally reurged the motion to sever at trial.

[46] To the extent the other defendants would seek to raise this issue by adoption by reference under Rule 28(i), severance issues are fact-specific, requiring a showing of "specific compelling prejudice," *United States v. Nutall*, 180 F.3d 182, 187 (5th Cir. 1999), and so cannot be so adopted by reference, *see Baptiste*, 264 F.3d at 586 n.6.

that a joint trial would compromise one of Jose Solis's specific trial rights or prevent the jury from making a reliable judgment about guilt or innocence, and the district court issued sufficient cautionary instructions to the jury.[47] Moreover, the jury acquitted some of the alleged co-conspirators, supporting an inference that the jury sorted through the evidence, however complex, and considered each defendant and each count separately.[48]

## 2.

Mendez argues that the district court erred in denying his motion to sever because he was prejudiced by being tried with co-defendants with prior convictions admitted in evidence against them and by the cumulatively prejudicial combination of evidence, offenses, and defendants and confusion of identities.  Mendez's arguments do not merit reversal, especially where, as here, the district court gave proper cautionary and limiting instructions sufficient to mitigate the risks of prejudice of which Mendez complains,[49] and where it cannot be said that the "jury could not be expected to compartmentalize the evidence as it relates to

---

[47]  *See Peterson*, 244 F.3d at 393-95; *United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996); *see also United States v. Carbajal*, 290 F.3d 277, 289 n.20, 291 (5th Cir. 2002); *cf. United States v. Bermea*, 30 F.3d 1539, 1573 (5th Cir. 1994) (rejecting a similar claim by a defendant "that he was greatly prejudiced by being tried jointly with three family members"); *United States v. Partin*, 552 F.2d 621, 640-41 (5th Cir. 1977) (rejecting a similar guilt-by-association-with-one's-brother argument).

[48]  *See United States v. Ellender*, 947 F.2d 748, 755 (5th Cir. 1991).

[49]  *See Richards*, 204 F.3d at 193-94; *United States v. Cihak*, 137 F.3d 252, 259 (5th Cir. 1998); *United States v. Rocha*, 916 F.2d 219, 228-29 (5th Cir. 1990); *Ellender*, 947 F.2d at 755.

separate defendants."[50] We conclude that the district court did not err in denying Mendez's motion to sever.

Mendez, however, also argues that the district court erred by denying his motions to sever, for mistrial, and for new trial based on Jose Solis's admission of the existence of a conspiracy during his closing argument. He argues that this admission by a non-testifying co-defendant violates his Fifth Amendment due process and Sixth Amendment Confrontation Clause rights.

We review the denial of motions for mistrial and for new trial for abuse of discretion.[51] We reject Mendez's argument. First, it is not at all clear that Jose Solis actually admitted the existence of the conspiracy. Throughout the closing, his attorney alternately referred to "the alleged conspiracy" and "the conspiracy." Second, to the extent that the statement did admit the existence of the conspiracy, the district court gave cautionary instructions that argument and statements of counsel are not evidence, as we have found sufficient to cure such prejudice in a similar case, in which one defendant's attorney indicated it was his belief that the evidence was sufficient to establish his client's guilt on one of the counts.[52] Furthermore, because the

---

[50] *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir. 1987).

[51] *United States v. Barton*, 257 F.3d 433, 439 n.10 (5th Cir. 2001) (motion for new trial), *cert. denied*, 122 S. Ct. 905 (2002); *United States v. Honer*, 225 F.3d 549, 555 (5th Cir. 2000) (motion for mistrial).

[52] *United States v. Hawkins*, 661 F.2d 436, 454-55 (5th Cir. Unit B Nov. 1981).

26

closing argument was not evidence, there was no denial of Mendez's rights secured by the Confrontation and Due Process Clauses.[53]

Furthermore, to the extent Mendez sought a mistrial and severance on these grounds, we have held that one co-defendant's admitting a conspiracy was not a mutually antagonistic defense that required severance.[54] No particular co-defendant was implicated, so the statement does not implicate *Bruton* concerns.[55] We find no error in the district court's denial of Mendez's motions to sever, for mistrial, and for new trial.

E. *Challenges to evidentiary rulings*

1. *Admission of summary testimony and charts under Federal Rule of Evidence 1006*

Garcia argues that the district court erred in admitting into evidence the government's exhibits 615-631, a series of charts summarizing evidence of communications between the defendants. We review a district court's evidentiary rulings for abuse of discretion and consider whether any error is harmless.[56]

We find no error in admitting the charts. The charts were drawn from competent evidence before the jury, which was available

---

[53] *Cf. id.*

[54] *See Rocha*, 916 F.2d at 231; *see also Zafiro v. United States*, 506 U.S. 534, 538 (1993) (holding that "[m]utually antagonistic defenses are not prejudicial *per se*," so as to mandate severance).

[55] *See generally Nutall*, 180 F.3d at 188.

[56] *See United States v. Powers*, 168 F.3d 741, 748 (5th Cir. 1999).

27

to the defendants at trial and was subject to cross-examination.[57] Moreover, the jury was properly instructed concerning use of the charts and the limitations thereof.[58] Furthermore, even if there was error in the use of the charts or the testimony of Agent Scott Douglas introducing them, Garcia does not argue that it affected one of his substantial rights.[59] The district court did not abuse its discretion in admitting this summary evidence.

2. *Admission of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E)*

Mendez argues that the district court abused its discretion in admitting hearsay statements, through the non-hearsay definition of Federal Rule of Evidence 801(d)(2)(E) for co-conspirator statements, from Chris Cooper, Honey Parsa, Jonathon Kollman, Meghann LaBonte, and Santiago Mejia regarding the source of drugs and hearsay statements from himself, because these statements were not made in furtherance of the conspiracy. We review "'the admission of hearsay evidence under the non-hearsay definition of Rule 801(d)(2)(E) for abuse of discretion.'"[60] Under our precedent, "[t]he proponent of admittance under Rule 801(d)(2)(E) must prove

---

[57] *See United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 1605 (2002).

[58] *See id.*

[59] *Compare United States v. Hart*, No. 01-60304, 2002 WL 1285810, at *7 (5th Cir. June 12, 2002).

[60] *United States v. Phillips*, 219 F.3d 404, 418 n.21 (5th Cir. 2000) (quoting *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999)).

by a preponderance of the evidence (1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy."[61]

After reviewing the evidence offered in connection with these statements, we affirm the district court's rulings admitting the challenged co-conspirators' statements and taped conversation. The government offered adequate evidence in support of the district court's rulings admitting these statements, and the district court's findings in support of those rulings were not clearly erroneous.[62] Accordingly, the district court did not abuse its discretion in admitting these statements under Rule 801(d)(2)(E).

---

[61] *Id.*

[62] *See id.* at 418-19; *United States v. Green*, 180 F.3d 216, 222-23 (5th Cir. 1999).

3. *Admission of redacted confessions of non-testifying co-defendants Arturo Meza and Jose Meza*

Mendez also argues that the district court abused its discretion in admitting redacted summaries of Arturo Meza's statement and Jose Meza's statements in violation of his Fifth Amendment rights as developed by *Bruton* and its progeny.

We conclude that there was no *Bruton* error in the admission of the summaries of the confessions of Arturo Meza and Jose Meza. The summaries contain no references to co-defendants, or specifically Mendez, even as a neutral pronoun.[63] Additionally, the district court provided proper limiting instructions.[64] We affirm the district court's admission of the summaries of the statements of Jose Meza and Hilario Meza into evidence.[65]

F. *Prosecutor's alleged comment on Garcia's failure to testify and post-arrest silence*

Garcia argues that the district court erred in overruling his objection to the prosecutor's alleged comment on his refusal to testify and his right to remain silent in violation of his Fifth Amendment rights. "We review de novo whether a prosecutor's

---

[63] *See Nutall*, 180 F.3d at 188; *United States v. Vejar-Urias*, 165 F.3d 337, 339-40 (5th Cir. 1999).

[64] *See Vejar-Urias*, 165 F.3d at 340.

[65] We have also considered Mendez's other evidentiary arguments but deemed them to be without merit.

argument is an impermissible comment on the defendant's right not to testify."[66]

"We apply a two-tiered test to [a defendant's] claim that the prosecutor improperly commented on his failure to testify," the first tier of which is to "determine whether the comments at issue were constitutionally impermissible."[67] We conclude that the prosecutor here did not make a constitutionally impermissible comment by stating: "This is a circumstantial case, it's a look back in time and piecing together of evidence that Defendants didn't want you or I to discover." Garcia objected to this statement at trial, and the district court gave a cautionary instruction and overruled the objection. The prosecutor then clarified his argument to the jury by stating that, "[c]learly, when people are engaged in criminal conduct, they don't want to be caught. And that's the point I'm trying to make."

Under these facts, the prosecutor's manifest intent was not to comment on the defendant's silence and the character of the remark was not such that the jury would naturally and necessarily construe it as a comment on the defendant's silence.[68] The *more* plausible explanation for the remark was that given by the prosecutor after

---

[66] *United States v. Morrow*, 177 F.3d 272, 299 (5th Cir. 1999).

[67] *United States v. Virgen-Moreno*, 265 F.3d 276, 291 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 843, *and cert. denied*, 122 S. Ct. 1452 (2002).

[68] *See id.*

31

the objection was overruled.  This comment was constitutionally permissible, and we reject this point of error.[69]

G. *Sufficiency of the evidence to establish venue for Count 12*

Arturo Meza argues that the district court erred in denying his motion for acquittal as to Count 12 when the government offered insufficient evidence that any of the events described therein occurred on August 19, 1997, in the Eastern District of Texas, as required for venue.  Mendez raises the same argument and also argues that the government failed to prove venue for the most prejudicial overt acts charged against him in Count 1.[70]

We review the district court's denial of a motion for judgment of acquittal *de novo*.[71]  Where a defendant argues that the government failed to adduce evidence sufficient to support venue for a particular count, "we view the evidence in the light most favorable to the Government, drawing all reasonable inferences in favor of the verdict."[72]  According to statute, "[w]hen an offense

---

[69] Garcia also argues that the prosecutor's comment constituted a *Doyle* violation.  *See Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976).  "A *Doyle* violation occurs when the government comments on the defendant's silence to rebut the defendant's exculpatory story." *United States v. Garcia-Flores*, 246 F.3d 451, 457 (5th Cir. 2001).  However, Garcia did not offer an exculpatory story, and so his argument based on post-arrest silence is misplaced.

[70] All the other defendants move to adopt the arguments of the other defendants by reference pursuant to Rule 28(i).  However, "[s]ufficiency of the evidence challenges are fact-specific, so we will not allow the appellants to adopt those arguments." *Baptiste*, 264 F.3d at 586 n.6.

[71] *Delgado*, 256 F.3d at 273.

[72] *United States v. Loe*, 248 F.3d 449, 465 (5th Cir.), *cert. denied*, 122 S. Ct. 397 (2001).

is begun in one district and completed in another, venue is proper in any district in which the offense was 'begun, continued, or completed,'"[73] and "venue is properly based on a preponderance of the evidence showing the commission of any single act that was part of the beginning, continuation, or completion of the crime."[74] We have held that, "[a]lthough the government must prove venue by the preponderance of the evidence, circumstantial evidence alone is sufficient to establish venue."[75]

Our review of the record convinces us that there was sufficient evidence that the heroin distributed as alleged in Count 12 was transported from the Eastern District of Texas on August 19 and delivered as part of the conspiracy to an apartment that, as the government stipulated, is located in the Northern District of Texas.[76] We note that, under *Pinkerton* liability, the government

_____

[73] *United States v. Fells*, 78 F.3d 168, 170 (5th Cir. 1996) (quoting 18 U.S.C. § 3237(a)).

[74] *Id.* at 171.

[75] *Loe*, 248 F.3d at 465.

[76] *See United States v. Tingle*, 183 F.3d 719, 727 (7th Cir. 1999) ("Distribution of drugs can be a continuing offense, and thus governed by § 3237(a) for purposes of venue, where there are multiple acts of the defendant which constituted distribution."); *United States v. Brunty*, 701 F.2d 1375, 1380–81 (11th Cir. 1983) (holding that distribution is a continuing offense); *cf. United States v. Pomranz*, 43 F.3d 156, 159 (5th Cir. 1995) (holding that "conspiracy to distribute marihuana is a continuing offense under [18 U.S.C. § 3237]"); *United States v. Davis*, 666 F.2d 195, 199 (5th Cir. 1982) (holding that possession with intent to distribute is a continuing offense under 18 U.S.C. § 3237). *Compare Carbajal*, 290 F.3d at 289 ("Even assuming that Carbajal did preserve this issue for appeal, venue in the Eastern District was proper because the government presented evidence that a convicted coconspirator purchased heroin from Carbajal and resold it in Denton County, which is located in the Eastern District of Texas.").

33

need not prove by a preponderance of the evidence that Arturo Meza himself transported the drugs from the Eastern District, but only that he or one of his co-conspirators did so. The district court did not err in ruling that there was sufficient evidence that one or more of the Meza brothers traveled with the heroin alleged in Count 12 from the Eastern District. As for Mendez's second argument, venue is not required over all overt acts alleged in Count 1, and so his argument on this score is without merit.[77]

H. *Sufficiency of the evidence to support the defendants' convictions*

In reviewing a challenge to the sufficiency of the evidence, we must determine whether a rational jury could have found that the evidence established guilt beyond a reasonable doubt on each element of the offense, drawing all reasonable inferences from the evidence and viewing all credibility determinations in the light most favorable to the verdict.[78] We do not evaluate the weight of the evidence or the credibility of the witnesses.[79]

1.

---

[77] *Cf. Pomranz*, 43 F.3d at 158-59 ("Furthermore, venue in conspiracy cases is proper in any district where the agreement was formed or where an overt act in furtherance of the conspiracy was performed.").

[78] *Barton*, 257 F.3d at 439. All the defendants timely made and properly renewed their motions for acquittal at the close of the evidence, so we review the sufficiency challenges *de novo* and not simply for plain error. *See id.*

[79] *Delgado*, 256 F.3d at 273-74.

To sustain a conviction for conspiracy "under 21 U.S.C. § 841, the government must prove beyond a reasonable doubt: '(1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement.'"[80] It is well-settled that "[a] jury may infer these elements from circumstantial evidence."[81]

Jose Solis, Pineda, Favela, Hilario Solis, and Mendez argue that the evidence is insufficient to support their convictions for conspiracy under Count 1 of the indictment.[82] The extensive evidence contained in the record and marshaled in the government's brief, however, affirms that these challenges are meritless. Thus, the evidence, viewed in the light most favorable to the government, adequately supports the jury's findings beyond a reasonable doubt that there was an agreement between two or more persons to distribute heroin and cocaine, that each of these defendants knew of the agreement, and that each voluntarily participated.[83]

---

[80] *Virgen-Moreno*, 265 F.3d at 284 (quoting *United States v. Gonzalez*, 76 F.3d 1339, 1346 (5th Cir. 1996)).

[81] *Baptiste*, 264 F.3d at 587.

[82] As noted above, although all the other defendants move to adopt the arguments of the other defendants by reference pursuant to Rule 28(i), sufficiency of the evidence challenges may not be adopted by reference. *Id.* at 586 n.6.

[83] Mendez also argues that the testimony of Martinez, Hancock, Alfonzo Meza, and Jose Meza was inherently incredible as a matter of law. "'Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature.'" *Green*, 180 F.3d at 221 (quoting *Bermea*, 30 F.3d at 1552). Mendez's attacks on the credibility of the testimony of these witnesses do not

35

2.

Jose Solis, Pineda, Favela, Hilario Solis, and Mendez, however, also challenge the sufficiency of the evidence to support their convictions for several substantive counts of the indictment. We have recently summarized the requirements for the government to prevail on a charge of a substantive violation of 21 U.S.C. § 841(a)(1): "The essential elements of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841 are 1) knowledge, 2) possession, and 3) intent to distribute the controlled substances."[84]

The government notes that the defendants can, in the absence of direct personal involvement, be held liable for the substantive counts charged against them based on *Pinkerton* liability.[85] "A party to a continuing conspiracy may be criminally liable for a substantive offense committed by a co-conspirator in furtherance of the conspiracy, even though the party does not participate in the substantive offense, or have any knowledge of it."[86] The government

---

rise to this level and so are without legal merit. *See United States v. Meshack*, 225 F.3d 556, 566 (5th Cir. 2000), *cert. denied*, 531 U.S. 1100 (2001), *and amended on other grounds on grant of reh'g in part*, 244 F.3d 367 (5th Cir.), *and cert. denied*, 122 S. Ct. 142 (2001).

[84] *Delgado*, 256 F.3d at 274.

[85] *See United States v. Hull*, 160 F.3d 265, 272 (5th Cir. 1998).

[86] *United States v. Garcia*, 242 F.3d 593, 597 n.3 (5th Cir. 2001); *see also United States v. Narviz-Guerra*, 148 F.3d 530, 535 (5th Cir. 1998) ("Thus, once the conspiracy and the defendant's knowing participation therein is proved beyond a reasonable doubt, a defendant is guilty of the substantive acts his partners committed in furtherance of the conspiracy.").

also correctly notes that the jury was instructed on a *Pinkerton* theory of liability as is required.[87]

We have further held, however, that "[a] party to a conspiracy may be held criminally responsible for a substantive offense committed by a coconspirator in furtherance of the conspiracy [only] if the offense was reasonably foreseeable and was committed during that party's membership in the conspiracy."[88] Distribution and possession with intent to distribute offenses are reasonably foreseeable acts in furtherance of a conspiracy to distribute drugs.[89]

Our review of the record convinces us that, with the exception of Pineda's challenge to his convictions for Counts 6 and 9, these defendants' arguments as to sufficiency of the evidence under the substantive counts charged against them are without merit based on the evidence presented at trial and, insofar as the defendants claim to have had no personal involvement in any particular drug transaction, on the basis of *Pinkerton* liability. Even drawing all reasonable inferences from the evidence and viewing all credibility determinations in the light most favorable to the verdict, however, we conclude that there was no evidence of personal involvement by

---

[87] *See Garcia*, 242 F.3d at 597 n.3.

[88] *Richards*, 204 F.3d at 210.

[89] *See United States v. Pierce*, 893 F.2d 669, 676 (5th Cir. 1990); *United States v. Hodges*, 606 F.2d 520, 523 (5th Cir. 1979); *United States v. Decker*, 543 F.2d 1102, 1104 (5th Cir. 1976).

37

Pineda in the transactions charged in Counts 6 and 9, as the government itself admitted at trial. Furthermore, the evidence presented at trial was insufficient to allow a reasonable jury to conclude that Pineda was a member of the conspiracy at a time prior to August 1997 and therefore at the time of the transactions on June 8, 1997 (Count 6) and July 23, 1997 (Count 9) so as to support Pineda's convictions of Counts 6 and 9 under a *Pinkerton* theory.

3.

We affirm the district court's denial of the motions for acquittal of Jose Solis, Favela, Hilario Solis, and Mendez and of Pineda as to Counts 1, 12, 14-15, 18-25, and 27-28, but we reverse Pineda's conviction on Counts 6 and 9, vacate his life sentences as to Counts 6 and 9, and remand for entry of a judgment of acquittal on these counts and resentencing, if necessary.

III. *Challenges to the defendants' sentences*

A. Apprendi *claims*

1.

Garcia, Pineda, Alfonzo Meza, Arturo Meza,[90] Hilario Solis, Mendez, and Jose Meza argue that their sentences violate the rule of *Apprendi v. New Jersey*[91] because the indictment failed to allege drug quantity and cause of death as required for sentencing under 21 U.S.C. § 841(b)(1) and because findings on these factual matters were not made either by a jury or upon proof beyond a reasonable doubt.[92] We address the claimed *Apprendi* violations as to drug quantity and cause of death in turn.

---

[90] Arturo Meza did not raise an *Apprendi* challenge to his sentence, but has moved to adopt his co-defendants' *Apprendi* arguments by reference under Rule 28(i). Although we have generally stated that sentencing challenges cannot be adopted under Rule 28(i), particularly challenges to the application of the Sentence Guidelines, because they are fact-specific, the *Apprendi* issue here, outside of a simple observation of the length of the sentences imposed on each defendant, is not fact-specific. *See Morrow*, 177 F.3d at 302 n.3 (noting that "challenges to the application of the Sentence Guidelines are generally fact-specific and cannot be adopted by reference pursuant to Fed. R. App. P. 28(i)"); *Baptiste*, 264 F.3d at 586 n.6 ("FRAP 28(i) permits appellants to do so for challenges that are not fact-specific as to a particular defendant."); *cf. United States v. McWaine*, 290 F.3d 269, 277 (5th Cir. 2002) ("We have raised *sua sponte Apprendi* issues in other cases when necessary to avoid manifest injustice."). We thus conclude that Arturo Meza has sufficiently raised this issue for appeal.

[91] 530 U.S. 466 (2000).

[92] Favela and Jose Solis do not raise *Apprendi* challenges to their sentences, and they could not successfully do so, because they were sentenced to 140 months and 240 months imprisonment, respectively, which is equal to or less than the statutory maximum of 20 years prescribed by 21 U.S.C. § 841(b)(1)(C), the default provision where no specific quantity or other enhancing fact is alleged. *See United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000), *cert. denied*, 531 U.S. 1177 (2001).

39

Following *Apprendi*, "[t]he district court must submit to the jury any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum," and, "[i]f the government seeks an enhancement of the penalties for a crime based on the amount of drugs, the quantity must be stated in the indictment and submitted to the jury for a finding of proof beyond a reasonable doubt."[93] In the absence of enhancing drug quantities, "Section 841(b)(1)(C) sets the statutory maximum for an offense involving an unspecified amount of a Schedule I substance at 20 years in prison," and "[h]eroin is a Schedule I substance."[94]

However, section 841(b)(1)(C) provides that, "if death or serious bodily injury results from the use of such substance [the defendant] shall be sentenced to a term of imprisonment of not less than twenty years or more than life."[95] We conclude that, pursuant to *Apprendi*, like drug quantity, whether death or bodily injury has resulted from a drug offense is a fact that must be proved beyond

---

[93] *United States v. Peters*, 283 F.3d 300, 313 (5th Cir.), *cert. denied*, 122 S. Ct. 1949, *and cert. denied*, 122 S. Ct. 2612 (2002). This application of *Apprendi* to 21 U.S.C. § 841 has been implicitly affirmed by the Supreme Court. *See United States v. Cotton*, 122 S. Ct. 1781, 1785, 1786 n.3 (2002).

[94] *United States v. Cooper*, 274 F.3d 230, 243 (5th Cir. 2001).

[95] 21 U.S.C. § 841(b)(1)(C); *cf. id.* § 841(b)(1)(A) ("such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life"); *id.* § 941(b)(1)(B) ("such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life").

40

a reasonable doubt to the finder of fact.[96] Consistent with the conclusions reached in our *Apprendi* case law regarding drug quantity under 21 U.S.C. § 841(b)(1), whether "death or serious bodily injury results from the uses of such substance" calls for a factual determination which "significantly increases the maximum penalty from 20 years ... to life imprisonment."[97] As such, the fact of cause of death is "a fact used in sentencing that does ... increase a penalty beyond the statutory maximum" and so "need[s to] ... be alleged in the indictment and proved to a jury beyond a reasonable doubt."[98]

Looking first to the alleged *Apprendi* errors involving drug quantity, no objection was raised at trial to the failure to include drug quantity in each count of the indictment or the failure to submit drug quantity to the jury for determination upon proof beyond a reasonable doubt, and, at sentencing, no objection was made to the judge's determination of drug quantity by a preponderance of the evidence standard. Only the sentences imposed

---

[96] *See United States v. Neuhausser*, 241 F.3d 460, 464-65 (6th Cir. 2000), *cert. denied*, 122 S. Ct. 181 (2001); *United States v. Flowal*, 234 F.3d 932, 936 n.2 (6th Cir. 2000); *United States v. Rebmann*, 226 F.3d 521, 524-25 (6th Cir. 2000); *cf. United States v. Cathey*, 259 F.3d 365, 368 n.12 (5th Cir. 2001) (implying in dicta that cause of death is a fact which could give rise to an *Apprendi* violation had the defendant been sentenced to more than 240 months); *Doggett*, 230 F.3d at 164 ("Section 841(b) defines the applicable penalties for violations of § 841(a) based on the type and quantity of drug, previous convictions, and whether death or serious bodily injury resulted from use of the drug.").

[97] *Doggett*, 230 F.3d at 164.

[98] *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000) (per curiam), *cert. denied*, 531 U.S. 1182 (2001).

in excess of 240 months on any given count are subject to *Apprendi* challenge,[99] such that only the defendants' respective sentences for Counts 1, 6, 9, 12, 26, 27, and 28 are subject to their *Apprendi* challenges.[100]  In the indictment here, as to these counts, a drug quantity of cocaine and/or heroin was alleged only in Count 26 against Garcia, stating only "more than 100 grams of heroin" and listing the count as a violation of 21 U.S.C. § 841(a)(1) with a potential penalty of "not less than 5 years nor more than 40 years," and in Count 28 against Pineda and Garcia, stating "more than 100 grams of heroin" and "approximately 250 grams of cocaine" and listing the count as a violation of 21 U.S.C. § 841(a)(1) with a potential penalty of "not less than 5 years nor more than 40 years."  Drug quantities were also alleged in Overt Acts 9, 15, 18, 19, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 35, 38, 39, and 40 listed under Count 1 for conspiracy in violation of 21 U.S.C. § 846.

In the absence of an objection at trial or sentencing, we review the alleged *Apprendi* errors as to drug quantity for plain error only.[101]  Under a plain error analysis, the court can correct

---

[99]  *See Doggett*, 230 F.3d at 165.

[100]  To recap, the *Apprendi* challenges apply only to Garcia's sentences on Counts 1, 6, 9, 12, 26, 27, and 28; Mendez's sentences on Counts 1, 6, 9, 12, and 27; Hilario Solis's sentences on Counts 1, 6, 9, and 12; Alfonzo Meza's sentences on Counts 1, 6, 12, and 27; Arturo Meza's sentences on Counts 1, 6, 9, 12, and 27; Jose Meza's sentences on Counts 1, 12, and 27; and Pineda's sentences on Counts 1, 12, 27, and 28, but, of course, excludes the sentences imposed on Pineda for Counts 6 and 9, on which we have reversed his convictions.

[101]  *Cotton*, 122 S. Ct. at 1785; *Peters*, 283 F.3d at 313.

an error not raised at trial only if there is (1) error, (2) that is plain, and (3) that affects the appellant's substantial rights, and further, if all three of these conditions are met, the court may exercise its discretion to notice the forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[102]

As to the failure to charge drug quantities in the indictment as to Counts 1, 6, 9, 12, and 27, the government argues, *inter alia*, that there is no *Apprendi* error because the penalty provision listed in Count 1 for conspiracy and Counts 6, 9, 12, and 27 provided the defendants with notice that they could be sentenced to imprisonment of "[n]ot less than 20 years not more than life." However, the district court here imposed sentences on the defendants of greater than 240 months for Counts 1, 6, 9, 12, and 27 not based on drug quantities but based on a finding by a preponderance of the evidence that the users of the heroin in Counts 6, 9, and 12 and of the cocaine and heroin in Count 27 died as a result of the drugs distributed to them by the defendants or their co-conspirators. Indeed, this comports with the penalty provision listed under Count 1, which matches up with the statutory sentencing ranges under 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C) of "not less than 20 years or more than life" where "death or serious bodily injury results from the use of such

---

[102] *Cotton*, 122 S. Ct. at 1785.

43

substance" and not the ranges in 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B) based on specified drug quantities in the absence of death or serious bodily injury caused by the use of the drug.[103] The basis for the district court's sentences is further confirmed by a review of the presentence investigation reports on the defendants, each of which the district court adopted in relevant part at sentencing.

As to Garcia's sentences for Counts 26 and 28 and Pineda's sentence for Count 28, there is no error in failing to include specific drug quantities in the indictment as to these counts if, as was the question presented in our recent decision in *United States v. Moreci*,[104] the information provided in each count "is sufficient to inform a defendant of the specific charges made against him, including the quantity of drugs alleged for the

_____

[103] *See* 21 U.S.C. § 841(b)(1)(A) ("Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows: (1)(A) In the case of a violation of subsection (a) of this section involving—(i) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin; ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life ...."); *id.* § 841(b)(1)(B) ("In the case of a violation of subsection (a) of this section involving—(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin; ... such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life ...."); *id.* § 841(b)(1)© ("In the case of a controlled substance in schedule I or II, ... except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life ....").

[104] 283 F.3d 293 (5th Cir. 2002).

44

purpose of sentencing enhancements and what those enhancements may be, in satisfaction of *Apprendi*."[105]  Unlike the facts presented *Moreci*, in which this court addressed this question as a matter of first impression, here Counts 26 and 28 did not include the identification of any particular subsection of 21 U.S.C. § 841(b)(1), but it did note that the possible penalties ranged from 5 year to 40 years imprisonment.  Such a penalty range is found only in 21 U.S.C. § 841(b)(1)(B), which provides that, in the case of a violation involving "100 grams or more of a mixture or substance containing a detectable amount of heroin,"[106] an offender upon conviction "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life."[107]  In the face of such information, Garcia and Pineda were on sufficient notice that they were being indicted for violations of section 841(a)(1) for an amount of more than 100 grams but less than one kilogram of heroin, which could not implicate the penalty provisions of 21 U.S.C. §

---

[105]  *Id.* at 297.

[106]  But less than "1 kilogram or more of a mixture or substance containing a detectable amount of heroin," which would implicate the penalty provisions of 21 U.S.C. § 841(b)(1)(A), which provides that a convicted offender "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life."

[107]  21 U.S.C. § 841(b)(1)(B).

841(b)(1)(C), including its maximum of 20 years in prison.[108]  There is no *Apprendi* error with regard to drug quantity alleged in the indictment in Counts 26 and 28.

Having established that there is no *Apprendi* error in the indictment as to Counts 26 and 28, we turn to the alleged *Apprendi* error in the district court's failure to charge the jury as to drug quantity on these counts.  Here, we apply both plain and harmless error analysis.[109]  Assuming there would otherwise be plain error,[110]

---

[108]  *See id.* § 841(b)(1)(C) ("In the case of a controlled substance in schedule I or II, ... *except as provided in subparagraphs (A), (B)*, and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life ..." (emphasis added)); *cf. Moreci*, 283 F.3d at 299 (conducting a similar analysis with regard to a charge involving marijuana to conclude "that a charge of 'more than 50 kilograms' takes an indictment out of the 'default' statute of § 841(b)(1)(D), into § 841(b)(1)(C), and, without more, operates to exclude the penalties of §§ 841(b)(1)(A) and (B)").

[109]  *Peters*, 283 F.3d at 313 ("Because the defendants did not object to the failure of the district court to include instructions with respect to drug quantity, we review for plain error.  Assuming that the error was otherwise plain, a jury instruction that omits an element of the offense is subject to harmless error analysis.  We will grant relief under this analysis only if the district court's failure to instruct the jury that it must find a specific drug quantity beyond a reasonable doubt was not harmless.  To determine harmlessness when a jury is not instructed as to an element of an offense, we decide whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted evidence." (footnotes omitted)).

[110]  This is by no means clear in light of *United States v. Cotton*, 122 S. Ct. 1781 (2002), where the Court, after finding that there was error that was plain, held that, "even assuming [the defendants'] substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1786.  This was because, despite "the omission of drug quantity from the indictment," there "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'" *Id.*  The *Cotton* Court detailed how "[m]uch of the evidence implicating [the defendants] in the drug conspiracy revealed the conspiracy's involvement with far more than 50 grams of cocaine base," *id.*, and noted that the defendants "never argued that the conspiracy involved less than 50 grams of cocaine base, which is the relevant quantity for purposes of *Apprendi*, as that is the threshold quantity for the penalty of life imprisonment in 21 U.S.C. § 841(b)(1)(A)," *id.* at 1786 n.3.  Thus, based on much the same

46

we conclude that any error was harmless because, as in *United States v. Green*,[111] there was "extensive, detailed, and uncontroverted testimony regarding" the quantities of drugs charged in Counts 26 and 28.[112] Our review of the record indicates that it contains no evidence which could lead the jury to rationally conclude contrary to the quantities of drugs charged in Counts 26 and 28. The jury had the indictment with it during deliberations, including the drug quantities charged in Counts 26 and 28, and the defendants offered no testimony controverting the amount of drugs involved in the charged drug transactions at trial and point to no such testimony or evidence on appeal.[113] We conclude that the district court's error in failing to instruct the jury to find a specific amount of drugs beyond a reasonable doubt as to Counts 26 and 28 was harmless.

We turn then to the alleged *Apprendi* errors in the omission of allegations as to cause of death from Counts 1, 6, 9, 12, and 27 of the indictment and the district court's failure to either charge the jury to make factual findings as to cause of death or to make

---

reasoning as this court has used to find harmless *Apprendi* error where drug quantity was not charged to the jury, *see, e.g.*, *United States v. Green*, 246 F.3d 433, 437 (5th Cir.), *cert. denied*, 122 S. Ct. 280 (2001), the *Cotton* Court found no reversible plain error although drug quantity was neither included in the indictment, as it was here, nor charged to the jury, without reaching a harmless error analysis.

[111] 246 F.3d 433 (5th Cir.), *cert. denied*, 122 S. Ct. 280 (2001).

[112] *Id.* at 437.

[113] *See Virgen-Moreno*, 265 F.3d at 298; *Delgado*, 256 F.3d at 281.

47

such a determination itself upon proof beyond a reasonable doubt. No objection was raised at trial to the failure to submit cause of death facts to the jury for determination upon proof beyond a reasonable doubt. At sentencing, however, the defendants objected to the failure to submit the evidence of the causes of death resulting from the use of the drugs to a jury for determination by a standard of proof beyond a reasonable doubt. The government therefore concedes that our review of these challenges is *de novo* but argues that the absence of cause of death from the indictment was the result of the defendants' own motion to strike and so any such violation of the rule of *Apprendi* is invited error. We agree.

> We have recently summarized the doctrine of invited error:

> The doctrine of invited error provides that "when injection of inadmissible evidence is attributable to the actions of the defense, the defense cannot later object to such 'invited error.'" Under this doctrine, a defendant cannot complain on appeal of alleged errors which he invited or induced, especially where the defendant may not have been prejudiced by the error. We "will not reverse on the basis of invited error, absent manifest injustice."[114]

Here, the cause of death facts were alleged in the indictment under Counts 1, 6, 9, 12, and 27,[115] but the defendants successfully moved to have these allegations stricken from the indictment and kept out of evidence through a "Motion to Strike Surplusage in Indictment

---

[114] *United States v. Green*, 272 F.3d 748, 754 (5th Cir. 2001) (footnotes omitted).

[115] Count 16 alleged serious bodily injury caused to a user of the drugs charged therein, but this count was dismissed at trial on the government's motion.

48

and Motion in Limine." The defendants argued at trial, prior to the Supreme Court's decision in *Jones v. United States*,[116] that the deaths caused by drugs alleged in Counts 1, 6, 9, 12, and 27, for which increased mandatory minimum and maximum sentences were available under 21 U.S.C. § 841(b)(1), were merely sentencing factors and not properly included in the indictment or the jury charge. They argued that it was unnecessary for the jury to make any determination regarding the deaths or injuries as alleged in the indictment because causing death or injury is not an element of the offense with which the defendants were charged and that, because the deaths or injuries do not relate to guilt or innocence, inclusion of these allegations in the indictment would unduly prejudice the defendants. The defendants successfully argued further that no evidence of the deaths or injuries to drug users should be presented to the jury.

The defendants clearly induced the erroneous omission, by way of a motion to strike, of the allegations regarding cause of death from Counts 1, 6, 9, 12, and 27 of the indictment and the subsequent failure to charge the jury to make factual findings by proof beyond a reasonable doubt on these matters. As counsel admitted at oral argument, there were clear strategic advantages to keeping such prejudicial material from the jury, and the defendants received the benefit of their successful efforts to insulate the

---

[116]   526 U.S. 227 (1999).

49

jury from this information.  The government, in response to the motion to strike, agreed that causing death or injury was not an element of the charged offenses, but sought to present evidence of the deaths or injuries to drug users as proof of the conspiracy, showing the defendants' motive, knowledge, and intent.

The defendants cannot maintain at trial that causing death or injury is not an element and is simply a sentencing enhancement, thereby inducing the district court to take the allegations from the indictment and keep the evidence from the jury, and then argue at sentencing that causing death or injury is an element and must be decided by proof beyond a reasonable doubt, by the district court, if not by a jury.  The defendants elected to have the cause of death or injuries issue decided as a sentencing matter by the court by the usual preponderance standard at sentencing, and not by the jury at trial by proof beyond a reasonable doubt as a matter of guilt or innocence.  The defendants knew that the differential standards of proof were the accompanying baggage when they succeeded in shuttling this issue to sentencing and away from trial.[117]

That the defendants later tried to renege on this bargain is of no moment, because they had waived their rights to have this

---

[117]   *See United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998) ("Ultimately, the district court 'need only determine its factual findings at sentencing by a preponderance of the relevant and sufficiently reliable evidence.'" (quoting *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991))).

issue determined by a jury as a matter of guilt or innocence, by proof beyond a reasonable doubt.[118]  Our conclusion might be different if the defendants had sought simply to waive their rights to have a jury decide the cause of death or injury issues and had elected to have the district court decide this issue as a matter of guilt or innocence by proof beyond a reasonable doubt.  But this was not the strategy the defendants pursued or the bargain they struck—the total package the defendants sought and received was to take this issue entirely from the jury's consideration and from the trial to determine their guilt or innocence, on the ground that the issue involved only sentencing enhancements to be decided by the court by the well-settled preponderance standard.

As a result, we find no manifest injustice will flow from our refusal to correct any such invited *Apprendi* errors.  We therefore reject the defendants' *Apprendi* challenges to their various sentences for Counts 1, 6, 9, 12, and 27.

2.

For the first time at oral argument, Jose Solis argued that his sentence was imposed in violation of the rule of *Apprendi* because the district court imposed his sentence under the twenty-year mandatory minimum sentence based on the district court's cause

---

[118]  At the so-called cause of death hearing, counsel for Garcia, in whose objection all of the defendants joined, explicitly argued that, if the defendants had waived their rights to a jury determination on the cause of death issues, they were still entitled to a determination by the court based on proof beyond a reasonable doubt.

51

of death findings by a mere preponderance of the evidence. We may decline to address this issue because it was not first raised in the briefs.[119] We need not do so, however, because the contention that *Apprendi* applies to mandatory minimums is meritless in light of the Supreme Court's recent decision in *Harris v. United States*.[120]

B. *Challenges to the evidence supporting the cause of death findings for sentencing purposes*

Several of the defendants raise challenges to the sufficiency or propriety of the evidence supporting the district court's cause of death findings for purposes of sentencing the defendants. We address these arguments in turn.

1.

Alfonzo Meza argues that, even under a preponderance standard, the government's proof at the cause of death hearing failed to establish that the individuals' deaths, as charged in Counts 6, 12, and 27 of the indictment, were caused by the use of heroin. Thus, he contends that the district court erred in enhancing his sentence under U.S.S.G. § 2D1.1(a)(2).

Alfonzo Meza argues that the government admits that neither Rob Hill (Count 12) nor Erin Baker (Count 27) died from heroin

---

[119] *See Comsat Corp. v. FCC*, 250 F.3d 931, 936 n.5 (5th Cir. 2001) ("Arguments presented for the first time at oral argument are waived."). *But cf. McWaine*, 290 F.3d at 277 ("We have raised *sua sponte Apprendi* issues in other cases when necessary to avoid manifest injustice.").

[120] 122 S. Ct. 2406 (2002).

overdoses but rather from an asthma attack (Hill) and a pulmonary embolism (Baker). Alfonzo Meza observes that the government's expert witness testified that heroin caused Hill's asthma attack but that a combination of heroin, cocaine and diphenhydramine caused Baker's embolism. He asserts that, because these opinions were not supported by a competent medical or scientific study, case report, or other evidence indicating that heroin can cause asthma attacks or blood clots, the government did not provide competent and trustworthy expert evidence to show a link between heroin and Hill's and Baker's deaths. Alfonzo Meza further argues that the evidence is insufficient to prove by a preponderance of the evidence that Milan Malina (Count 6) died from a heroin overdose because it is equally probable he died from a cocaine overdose but cocaine was not charged in Count 6 or discussed in the presentence report (PSR).

Because we have determined that the defendants waived any right they had to have the cause of death issue as to Counts 1, 6, 9, 12, and 27 resolved as a matter of guilt or innocence by a jury by proof beyond a reasonable doubt, the district court's cause of death findings were only required to be made by a preponderance of the evidence to support an enhancement under U.S.S.G. § 2D1.1(a)(2) based upon the usual rules governing a court's factual findings for

53

sentencing purposes.[121]  We review the district court's factual findings for clear error only, and, in making its findings, the district court may consider any information which bears "sufficient indicia of reliability to support its probable accuracy," including hearsay evidence, without regard to admissibility under the Federal Rules of Evidence which govern at trial.[122]  "The district court's findings are not clearly erroneous if they are plausible in light of the record reviewed in its entirety."[123]

At sentencing, the defendant bears the burden of rebutting the evidence used against him for purposes of sentencing by proving that it is materially untrue, inaccurate or unreliable.[124]  "Mere objections do not suffice as competent rebuttal evidence."[125]

Alfonzo Meza does not deny that he supplied the heroin alleged in Counts 6, 12, and 27, only that the heroin caused the respective users' deaths.  We have recently held "that § 2D1.1(a)(2) is a strict liability provision and does not require proof of proximate

---

[121]  *See Huskey*, 137 F.3d at 291.  U.S.S.G. § 2D1.1(a)(2) provides for a base offense level of 38 if "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)©), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance."  U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(a)(2) (1998).

[122]  *Huskey*, 137 F.3d at 291; *United States v. Smith*, 13 F.3d 860, 863 n.5 (5th Cir. 1994).  For this reason, Garcia's and Mendez's assertions, without supporting argument, that their sentences were imposed in error because the district court did not adhere to the Federal Rules of Evidence at the so-called cause of death hearing are meritless.

[123]  *United States v. Kelley*, 140 F.3d 596, 609 (5th Cir. 1998).

[124]  *United States v. Ashburn*, 20 F.3d 1336, 1349 (5th Cir. 1994).

[125]  *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998).

causation or reasonable foreseeability" such that a defendant can "be held responsible for overdose deaths if the government could show a reasonable medical probability that heroin supplied by [the defendant] caused the deaths."[126]

Dr. William Rohr, the medical examiner who performed the autopsies of Malina and Hill, testified that there was a reasonable medical probability that the heroin used by Hill and Malina proximately caused their deaths, and the defendants offered no evidence to refute this expert testimony. Dr. Mark Andrew Krause, the medical examiner who performed the autopsy of Baker, testified that there was a reasonable medical probability that heroin and cocaine, in some combination, caused Baker's death, *i.e.*, that it is more likely than not that Baker would not have died had she not ingested the cocaine and heroin, even though the proximate cause of death was the pulmonary embolism.

Alfonzo Meza essentially attempts to argue a standard which we have already rejected for purposes of sentencing under section 2D1.1(a)(2), that the drugs supplied by the defendant must be "'a direct cause of death, not a possible or remote cause.'"[127] Although Dr. Krause stated that he could not say that the heroin Baker ingested alone caused her death, his testimony that the heroin and cocaine in combination contributed to or caused Baker's

---

[126] *Carbajal*, 290 F.3d at 283, 284.

[127] *See id.* at 284.

55

death is sufficient to support the district court's finding that cocaine and heroin together caused the death of Baker.[128]  Again, the defendants offered no rebuttal evidence to the contrary.

Accordingly, based on our review of the record, we conclude that the district court did not clearly err in finding that heroin caused the deaths of Hill and Malina and that cocaine and heroin together caused the death of Baker, such that Alfonzo Meza was properly sentenced on the basis of these users' deaths pursuant to U.S.S.G. § 2D1.1(a)(2).

2.

Arturo Meza argues that the district court erred in admitting evidence offered by the government at the cause of death hearing of cocaine allegedly supplied by the defendants in connection with the death of Erin Baker as alleged in Count 27.  He contends that this was error because it differed from the factual basis offered for Baker's death in the PSR, to which the government did not object, and that the government therefore waived any error arising from discrepancies on this point in the PSR.

We review challenges to the admission of evidence for abuse of discretion only, subject to a harmless error analysis.[129]  We have held that the government waived any error as to discrepancies in the findings in a PSR regarding drug quantity and equivalencies,

---

[128]  *See id.* at 286.

[129]  *See Powers*, 168 F.3d at 748.

which the district court had accepted in making its calculations, by failing to object to the findings in the PSR before the district court.[130] Arturo Meza offers a unique spin on this holding, arguing that the district court erred in allowing the government to offer evidence that Erin Baker died from cocaine or heroin when the PSR provides only that her death resulted from heroin use and the government offered no objection to this finding in the PSR.[131]

The district court did not abuse its discretion in allowing the government to present evidence in support of findings beyond those contained in the PSR. Although it is well-settled that "a district court may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable,"[132] the district court is not limited at sentencing to the findings in the PSR and the evidentiary bases therefor. The authority upon which Arturo Meza relies is inapposite, holding that the government waives its right to challenge on appeal the district court's findings where the district court adopted the findings of the PSR and the government

---

[130]  *United States v. Smallwood*, 920 F.2d 1231, 1235 n.1 (5th Cir. 1991).

[131]  On appeal, Arturo Meza does not claim that he and his co-conspirators were not the source of the cocaine ingested by Baker.

[132]  *United States v. Cabrera*, 288 F.3d 163, 173-74 (5th Cir. 2002).

failed to object to the relevant findings in the PSR in the district court.[133]

Moreover, the district court provided the defendants with time in the course of the hearing to prepare to challenge the government's evidence regarding cocaine distribution and use once the government indicated its intention to present this evidence following Dr. Krause's testimony that Baker's death was caused by the ingestion of a combination of cocaine and heroin. Under these circumstances, the district court did not abuse its discretion in admitting evidence at the cause of death hearing that the defendants supplied cocaine which caused Baker's death.

3.

Pineda argues that the district court erred in denying his objection to the portions of the PSR in which his base offense level was calculated to be 38 pursuant to U.S.S.G. § 2D1.1(a)(2). He contends that he was not involved with the deaths of Milan Malina (Count 6), George Wesley Scott (Count 9), Rob Hill (Count 12), or Erin Baker (Count 27) or the serious bodily injury to Daniel Mierek (Count 16). Pineda argues that the government presented no evidence that he was involved in the conspiracy at the time the deaths of Malina, Scott, and Hill occurred. He also asserts, without supporting argument, that the government presented

---

[133] *See Smallwood*, 920 F.2d at 1235 n.1.

insufficient evidence of causation regarding the deaths of Malina, Hill, Scott, and Baker and the injury to Mierek.

We have already determined that there was insufficient evidence to convict Pineda of Counts 6 and 9, and, although "acquittal is not a barrier to consideration of the underlying conduct at sentencing so long as that conduct was proven by a preponderance of the evidence,"[134] under the circumstances presented here, Pineda's involvement in the conspiracy prior to August 1997 was not even proven measured against this lower standard. As to the death of Hill (Count 12) and Baker (Count 27), however, Pineda has shown no clear error in the district court's finding that Pineda was criminally responsible for the drugs which resulted in these users' deaths. We have found, based on a reasonable doubt standard, that there was sufficient evidence to convict Pineda based on *Pinkerton* liability on Counts 12 and 27, and there is likewise sufficient evidence in the record on which to sentence Pineda for his involvement in the conspiracy which resulted in these users' deaths.[135] Moreover, based on the discussion above as

---

[134] *United States v. Wells*, 262 F.3d 455, 467 n.16 (5th Cir. 2001).

[135] *Cf. United States v. Alarcon*, 261 F.3d 416, 423 n.3 (5th Cir. 2001) ("Bearing in mind that we affirmed Ruben's and Llama's convictions for using a minor, we need not consider the contention that their increased sentences for using a minor should be vacated because there is insufficient evidence. The burden of proof for affirming their convictions is beyond a reasonable doubt, while the burden of proof in sentencing is a preponderance of the evidence."), *cert. denied*, 122 S. Ct. 854 (2002).
As to the evidence concerning the injury to Mierek, we need not consider whether the district court's factual findings as to the cause of his injuries are supported by sufficient evidence, because any error would be harmless. Even if Mierek's injury charged under Overt Act 20 in Count 1 of the indictment had not

to Alfonzo Meza's challenges to his sentences and our conclusion that sufficient evidence exists in the record to support Pineda's convictions on Counts 12 and 27 on the basis of *Pinkerton* liability, we conclude that the district court did not clearly err in finding by a preponderance of the evidence that the drugs charged in the respective counts caused the deaths of Hill and Baker.[136]

4.

Mendez argues that there is insufficient evidence to tie him to a cocaine conspiracy and so insufficient evidence to sentence him for the deaths of victims alleged in Counts 6, 9, 12, and 27, particularly Baker's death alleged in Count 27. Mendez also argues that the district court erred in allowing the admission through a government witness of the inherently unreliable, redacted statements of Jose Meza in violation of Mendez's Fifth Amendment rights as developed in *Bruton*. Based on our rejection of Mendez's challenges to his convictions on these same grounds, we reject his points of error.

---

been used to sentence Pineda, a review of the PSR demonstrates that Pineda's combined adjusted offense level for purposes of sentencing would remain unchanged. *See United States v. Kings*, 981 F.2d 790, 795 n.11 (5th Cir. 1993).

[136] *See Carbajal*, 290 F.3d at 284 (noting but declining to apply to the facts of the case before it that the Sixth Circuit had held, in "a situation in which the defendant played no direct role in distributing or manufacturing the drugs that allegedly caused the deaths," that, "before the district court may enhance a defendant's sentence under § 841(b)(1)© based solely on the conduct of a coconspirator, the court must find that the coconspirator's conduct was (1) in furtherance of the conspiracy and (2) reasonably foreseeable").

C. *Denial of acceptance of responsibility*

Pineda argues that the district court erred in denying him a two-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, where he was willing to plead guilty to Count 1 prior to trial but wanted to challenge any sentencing enhancement under 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1 and to challenge the rulings on his pretrial motions to dismiss on double jeopardy grounds and to suppress. He notes that he has pled guilty in other proceedings to several of the charges alleged in Count 1 and argues that he has admitted the essential elements of guilt from the start. Thus, he contends that this is the rare situation in which a defendant is not precluded from reduction for acceptance of responsibility even though he exercised his right to trial.

While we generally review a district court's factual finding under the Guidelines for clear error, "[a] district court's determination of whether a defendant is entitled to a reduction of his offense level for acceptance of responsibility is reviewed with even more deference than the pure 'clearly erroneous' standard."[137] As such, "[w]e will affirm a sentencing court's decision not to award a reduction under U.S.S.G. § 3E1.1 unless it is 'without foundation.'"[138]

---

[137] *United States v. Brenes*, 250 F.3d 290, 292 (5th Cir. 2001).

[138] *United States v. Anderson*, 174 F.3d 515, 525 (5th Cir. 1999).

61

This is not one of the rare situations in which a defendant who put the government to its proof at trial is nevertheless entitled to a reduction for acceptance of responsibility. At the very least, Pineda's suppression issue, which relates to his factual guilt, his failure to debrief the probation officer, and his challenge to the substantive counts against him, notwithstanding his offer to plead guilty to the conspiracy count, distinguish this case from those in which such a reduction would be warranted.[139]

Given our deferential standard of review, the district court did not commit reversible error in denying Pineda a two-level decrease for acceptance of responsibility.

D. *Application of the grouping rules to determine Pineda's sentence*

Pineda also argues that the district court erred in denying his objections to the paragraphs of the PSR wherein five levels were added to his base offense level pursuant to U.S.S.G. §§ 3D1.2 and 3D1.4. He argues that all of his violations of the drug statutes should have been grouped together under U.S.S.G. § 3D1.2(d) because they involve "substantially the same harm within the meaning of" section 3D1.2.[140]

---

[139] *Compare United States v. Brace*, 145 F.3d 247, 264-65 (5th Cir. 1998) (*en banc*); *Fells*, 78 F.3d at 171-72; *United States v. Maldonado*, 42 F.3d 906, 913-14 (5th Cir. 1995); *United States v. Montes*, 976 F.2d 235, 241 (5th Cir. 1992).

[140] All the defendants generally move to adopt the arguments of the other defendants by reference pursuant to Rule 28(i), but Mendez explicitly seeks to adopt Pineda's argument by reference. However, "challenges to the application of the Sentence Guidelines are generally fact-specific and cannot be adopted by

We "review *de novo* the district court's application of the Sentencing Guidelines grouping rule."[141]  On this review, "[t]he sentence will be upheld if it was imposed as the result of 'a correct application of the guidelines to factual findings which are not clearly erroneous.'"[142]

U.S.S.G. § 3D1.2 provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing

---

reference pursuant to Fed. R. App. P. 28(i)." *Morrow*, 177 F.3d at 302 n.3.  We have recognized an exception to this rule where the challenge raises only a general question as to the application or interpretation of the Sentencing Guidelines as to all defendants and so "does not require us to make any fact-specific inquiries." *Id.*  How the district court grouped the specific counts for which each defendant was convicted, however, is fact-specific as to each defendant and so does not fit within this exception. *See Baptiste*, 264 F.3d at 586 n.6.  Notably, Pineda was charged in and convicted of Counts 1, 6, 9, 12, 14-16, 18-25, and 27-28 and sentenced for Counts 1, 6, 9, 12, 18-25, and 28, while Mendez was charged in, convicted of, and sentenced for Counts 1, 6, 9, 12, and 27.  As such, because Mendez, like the other defendants, inadequately argued this issue in his own brief, he has waived this issue on appeal. *See Trevino v. Johnson*, 168 F.3d 173, 181 n.3 (5th Cir. 1999).

[141] *United States v. Lyckman*, 235 F.3d 234, 237 (5th Cir. 2000), *cert. denied*, 532 U.S. 986 (2001).

[142] *United States v. Leonard*, 61 F.3d 1181, 1185 (5th Cir. 1995) (quoting *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990)).

or continuous in nature and the offense guideline is written to cover such behavior.[143]

We have explained that "Section 3D1.2 divided offenses into three categories regarding grouping: (1) those to which the section specifically applies; (2) those to which the section specifically does not apply; and (3) those for which grouping may be appropriate on a case-by-case basis."[144]

Pineda argues that the district court erred in not grouping all of his counts of conviction together pursuant to U.S.S.G. § 3D1.2(d), obviating the application of a five-level increase pursuant to U.S.S.G. § 3D1.4, because they all involve substantially the same harm and because he was not proven responsible for any deaths alleged in Counts 6, 9, 12, and 27 and should therefore have been sentenced solely on the basis of drug type and quantity. Pineda also argues that, even if he is responsible for the deaths under Counts 6, 9, 12, and 27, U.S.S.G. § 3D1.2(d) applies because his offense behavior was ongoing or continuous in nature and the relevant offense guideline, U.S.S.G. § 2D1.1(a)(2), is written to cover such behavior, providing a base offense level of 38 "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)©), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the

---

[143] U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 (1998).

[144] *United States v. Salter*, 241 F.3d 392, 394 (5th Cir. 2001).

64

substance."[145]  Moreover, section 2D1.1 is an offense guideline explicitly covered by section 3D1.2.[146]  Therefore, Pineda argues that his total offense level should have been 38 pursuant to U.S.S.G. §§ 3D1.2(d) and 2D1.1(a)(2) and not 43 pursuant to U.S.S.G. § 3D1.4.

The district court grouped Counts 1, 14-15, 18-25, and 28 together pursuant to section 3D1.2(b) but formed five other groups containing Count 1 and each of Counts 6, 9, 12, 16, and 27, because these were characterized by the death or serious bodily harm caused to the user of the drugs alleged therein.[147]  The district court's grouping resulted in six groups, with adjusted offense levels ranging from 34 to 38, which, pursuant to U.S.S.G. § 3D1.4, resulted in a greater adjusted offense level of 38, to which five units were added, to reach a total offense level of 43.  This offense level mandates a life sentence.

We have, however, reversed Pineda's convictions for Counts 6 and 9.  Even assuming the district court correctly applied sections 3D1.2 and 3D1.4 to group Pineda's counts of conviction, our decision vacating his sentence on these counts reduces the number of groups and correspondingly the number of units by two.  As such,

---

[145]  U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(a)(2) (1998).

[146]  *Id.* § 3D1.2.

[147]  *See id.* § 3D1.2, cmt. n.4 ("When one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under subsection (b).").

65

the total offense level pursuant to section 3D1.4 would be 41, not 43, which, with Pineda's placement in Criminal History Category I, provides for a range of 324-405 months and not a mandatory life sentence. As such, we must reverse Pineda's sentences and remand for resentencing.

In order to provide guidance to the district court on resentencing, however, we address the issue and conclude that the district court did not err in its grouping analysis. The district court correctly looked for guidance in interpreting the applicability of section 3D1.2(d) to the background commentary to section 3D1.2, which in turn references the Introductory Commentary to Chapter 3, Part D of the Sentencing Guidelines.[148] The district court, guided by the analysis offered by the probation officer, concluded that section 3D1.2 does not account for multiple counts of death resulting from drug use, such that the prevailing commentary lies in the Sentencing Commission's observation that "[c]ases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together."[149] However, this statement is followed by the instruction that "[c]ounts involving different victims (or societal harms in the case of 'victimless' crimes) are

---

[148] *See id.* § 3D1.2, cmt. background; *see also id.* ch. 3, pt. D, introductory cmt.

[149] *Id.* § 3D1.2, cmt. background (1998)

grouped together only as provided in subsection (c) or (d)."[150]  And section 3D1.2(d) provides that "[c]ounts involve substantially the same harm within the meaning of this rule: ... if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."[151]

At sentencing, the probation officer agreed that Pineda's offense conduct was ongoing or continuous in nature.  However, he argued that section 2D1.1(a)(2) was not written to cover offense conduct, such as Pineda's, causing multiple deaths because it simply provides a base offense level of 38 if "the offense of conviction establishes that *death or serious bodily injury* resulted from the use of the substance."  Therefore, the offense guideline does not allow the court to take into account more than one death.  The district court agreed with the probation officer and determined that section 3D1.2(d) does not cover deaths and does not allow for aggregating multiple deaths.

Pineda responds that section 2D1.1(a)(2) was written to cover the harm caused by the use of the controlled substance at issue.  He notes that section 2D1.1(a)(2) does not provide for the higher base offense level only "if one death occurs" or "if multiple deaths occur."

---

[150]  *Id.*

[151]  *Id.* § 3D1.2(d) (1998).

We agree with the district court that section 3D1.2(d) does not apply because the offense guideline, U.S.S.G. § 2D1.1(a)(2), is not written to cover such behavior, *i.e.*, multiple counts alleging that the deaths of distinct victims resulted from the use of the drugs charged.[152]   Accordingly, we are guided by the Sentencing Commission's observation that, unless sections 3D1.2(c) or 3D1.2(d) applies, counts involving different victims should not be grouped together.[153]   Our conclusion is further supported by the Sentencing Commission's commentary that a rule requiring the grouping together of the stabbing of three prison guards in a single escape attempt was rejected because "it probably would require departure in many cases in order to capture adequately the criminal behavior."[154] Given the operation of section 2D1.1(a)(2), we are persuaded that holding section 3D1.2(d) to require grouping multiple counts involving the deaths of distinct drug users would require departure in order to capture adequately the criminal behavior, and so the offense guideline, U.S.S.G. § 2D1.1(a)(2), is not written to cover the behavior for which Pineda was convicted in multiple counts.

We vacate Pineda's sentences and remand for resentencing on Counts 1, 12, 14-15, 18-25, and 27-28 consistent with this opinion.

---

[152]   *Cf. United States v. Gist*, 101 F.3d 32, 34 (5th Cir. 1996).

[153]   *Id.* § 3D1.2, cmt. background (1998).

[154]   *Id.*

68

E. *Determination of relevant conduct for sentencing purposes*

Hilario Solis argues that the government failed to present any competent evidence as to the quantity of two kilograms of cocaine attributed to him as relevant conduct. Mendez likewise argues that there is no corroborating evidence that he was in the conspiracy or chain of supply for the drugs that caused the users' deaths alleged in Counts 6, 9, 12, or 27, on the basis of which he was sentenced. He argues that the district court erred in failing to make individualized findings of his relevant conduct.

We review the district court's factual determination of a defendant's relevant conduct for sentencing purposes for clear error only.[155] To count as relevant conduct under the guidelines, "[i]t is not necessary for the defendant to have been charged with or convicted of carrying out the other acts before they can be considered relevant conduct," although "the conduct must be criminal."[156] Additionally, "[i]t is well established that relevant conduct under the sentencing guidelines includes all reasonably foreseeable acts of coconspirators in furtherance of the conspiracy."[157]

It is also well-settled that "a district court may adopt facts contained in a Presentence Report (PSR) without further inquiry if

---

[155] *Cooper*, 274 F.3d at 238.

[156] *Anderson*, 174 F.3d at 526.

[157] *Cooper*, 274 F.3d at 241.

the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence."[158]  Here, the district court relied upon the findings of relevant conduct in Hilario Solis's PSR, which had an adequate evidentiary basis for the two kilograms of cocaine attributed to Hilario Solis and to which Hilario Solis offered no rebuttal evidence.  Under these circumstances, the district court properly adopted the PSR and relied upon the information contained therein to make its factual findings.[159]  Moreover, because the relevant conduct finding challenged here did not affect Hilario Solis's combined adjusted offense level, any error was harmless.[160]

As with Hilario Solis, the district court made sufficient individualized findings as to Mendez by adopting the PSR, to which Mendez offered no rebuttal evidence.  Under these circumstances, the district court, which had heard all of the evidence presented against Mendez and his co-conspirators at trial, did not err in its determination of Mendez's relevant conduct.[161]

We find no clear error in the district court's determination of relevant conduct for purposes of sentencing Hilario Solis or

---

[158]  *Peters*, 283 F.3d at 314.

[159]  *See United States v. Freeman*, 164 F.3d 243, 251 (5th Cir. 1999).

[160]  *See Kings*, 981 F.2d at 795 n.11; *accord United States v. Cade*, 279 F.3d 265, 273 (5th Cir. 2002) ("The error is harmless only if the party defending the sentence persuades us that the district court would have imposed the same sentence absent the erroneous factor.").

[161]  *See Freeman*, 164 F.3d at 251.

70

Mendez.  The sentences imposed on these defendants are affirmed over these challenges.

IV.

For the foregoing reasons, we AFFIRM the convictions and sentences of Jose Solis, Garcia, Favela, Alfonzo Meza, Arturo Meza, Hilario Solis, Mendez, and Jose Meza, and the convictions of Pineda on Counts 1, 12, 14-15, 18-25, and 27-28.  However, we REVERSE Pineda's convictions on Counts 6 and 9, VACATE his sentences on Counts 1, 6, 9, 12, 14-15, 18-25, and 27-28, and REMAND for entry of a judgment of acquittal on Counts 6 and 9 and for resentencing on Pineda's remaining counts of conviction consistent with this opinion.