IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2007

Charles R. Fulbruge III
Clerk

No. 07-30157

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

TYRONE HADLEY

Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:05-CR-74-1

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PER CURIAM:[*]

Following the district court's denial of his motion to suppress evidence discovered pursuant to a traffic stop, Tyrone Hadley, Jr. ("Hadley") entered a conditional plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Hadley challenges the denial of his motion to suppress, arguing that the district court erred in finding that officers had probable cause to stop his car because its temporary license tag had expired. Hadley asserts that he was displaying a valid permanent license plate on his car,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

not an expired temporary tag, so there was no lawful basis for the stop. For the following reasons, we AFFIRM the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. The traffic stop

On November 26, 2004, Baton Rouge Police Department officers Jason Thompson ("Detective Thompson") and Brett Busbin ("Detective Busbin") were working for a group of apartment complexes that hire off-duty police officers to patrol their properties. The officers were driving on a highway behind a 2005 Dodge Magnum (the "Magnum") when the Magnum slowed to turn into the apartment complex where the officers were going. Detective Thompson testified that as the Magnum slowed, he saw a temporary license tag bearing an expiration date of November 15, 2004 in the left side of the rear window of the Magnum, and he mentioned this to Detective Busbin. Detective Busbin testified that he looked at the tag and confirmed that it had expired. Detective Thompson testified that there was no hard, permanent license plate on the car. After the Magnum turned into the apartment complex and parked, the officers pulled up behind it and activated their police lights.

The officers approached the driver's side of the Magnum to question the driver, Hadley. Detective Busbin observed Hadley hunched down, apparently attempting to put something underneath his seat. The officers smelled burnt marijuana coming from the car. After they ordered the driver and passengers to exit the vehicle, they observed several bags of marijuana in plain view inside the car. Hadley stated that the marijuana belonged to him, and the officers arrested him for marijuana possession and placed him in handcuffs. Detective Thompson then searched the car and found a firearm under the driver's seat. The officers both stated that Hadley was attempting to hide a firearm magazine

2

while he was handcuffed, though their accounts differ slightly.[1]   After Hadley stated that the firearm also belonged to him, the officers released the Magnum's passengers from the scene, and the passengers took the Magnum with them. Detective Thompson recorded the expiration date of the Magnum's temporary tag number in his police report, but he did not record the temporary tag number, seize the tag, or issue a citation for the expired tag.  He testified that he called in the car's Vehicle Identification Number ("VIN") to determine whether the car was stolen; however, the Baton Rouge Crime Information Unit Activity Log does not contain a record of the number having been run.

Hadley's father, Tyrone Hadley, Sr., testified that on November 27, the day after the traffic stop, he went to pick up the Magnum at the home of one of the passengers.  He stated that at that time the car had a hard license plate and not a temporary tag.

B.  The history of the Magnum prior to the traffic stop

At the time of the traffic stop, Hadley was renting the Magnum from Enterprise Rent-A-Car ("Enterprise") in Denham Springs, Louisiana, with a rental contract that began on November 8, 2004.  Enterprise had purchased the Magnum from Community Motors on September 16, 2004, and Community Motors had issued a temporary tag for the vehicle on the previous day, September 15.  The temporary tag should have been valid for sixty days from September 15, expiring on November 14. However, Marie Badon, office manager for Community Motors, testified that the normal practice of the person issuing temporary tags was to make the expiration date exactly two months from the

---

[1] Detective Busbin testified that a magazine came out of Hadley's pants leg and that Hadley tried to use his foot to push it underneath the vehicle.  Detective Thompson testified that when Hadley stood up from his seated position behind the car, there was a firearm magazine on the ground underneath where he had been seated.  In his affidavit of probable cause, Detective Thompson stated that Detective Busbin had observed Hadley take a loaded firearm magazine out of his pants and discard it under the vehicle.

date the temporary tag was issued, a practice that would have produced an expiration date of November 15.

Paul Stanworth ("Stanworth"), district manager for Enterprise, testified that the car would have had a temporary tag when it was originally put into service by Enterprise. On October 27, Enterprise received the hard license plate for the Magnum, bearing the number A632673, at its administrative office in New Orleans. Enterprise's practice is to enter the plate number into the computer system,[2] then send the plate through overnight mail to the branch office in Denham Springs, where it is normally installed on the car within a day or two and the temporary tag is shredded. However, at the time the Magnum's hard plate would have been received in Denham Springs, the Magnum was being rented to another customer who did not return it until November 3. Under such circumstances, the normal procedure is to place the hard plate in the file with the customer's contract for later installation. After the car was returned on November 3, two other customers rented it before Hadley's contract began on November 8. Enterprise does not keep records of when hard plates are installed, but Stanworth testified that he had no reason to doubt that at the time the Magnum was rented to Hadley, it had a hard plate installed on it.

C. Events occurring after the traffic stop

Ten days after the traffic stop, on December 6, 2004, different officers stopped Hadley while he was driving the Magnum. Officer Felton Thornton ("Officer Thornton") of the Baker Police Department pursued and stopped the Magnum after a witness to a disturbance told him that Hadley, who was driving the Magnum, was going to get a gun and come back and shoot someone. Officer Thornton testified that he searched the Magnum and found a hard license plate

---

[2] Subsequent to the entry of the number into the system, any rental contract involving the car will have the hard plate number on it, regardless of whether the plate has been affixed to the car. Therefore, the fact that Hadley's rental contract contained the license plate number does not establish that the plate had been installed on the Magnum at the time he rented it.

inside the hatchback, not affixed to the car. He recorded the license number as A632673 in his report, but he did not indicate in his report that the license plate was not affixed to the car, nor did he issue a ticket for improper display of a license plate. Officer James Rathmann, who also participated in the stop, also testified that the hard license plate was inside the vehicle. Neither officer recalled seeing a temporary tag in or on the Magnum.

After the Baker Police Department officers arrested Hadley for terrorizing and simple battery, Rodney Halley ("Halley") of Rocket Towing came to the scene to tow the Magnum. The tow slip contained a notation of the Magnum's hard plate number. Halley provided conflicting accounts of whether there was a hard plate on the car at the time he towed it. In his original affidavit, Halley stated that the Magnum had a hard license plate on it and no temporary tag. He also stated that if the license plate had not been on the car, he would not have written it on the tow slip. Subsequently, after speaking with the prosecutor and other government officials, Halley executed a second affidavit in which he stated that he did not recall whether there was a hard plate or a temporary tag in or on the vehicle and that he was not sure whether the license plate number on the tow slip was in his handwriting. His testimony at the suppression hearing was consistent with the second affidavit.

Several months after these events, on March 22, 2005, Hadley received a citation for a switched license plate violation. Corporal Darren Moses of the Baton Rouge Police Department observed Hadley in a gray Cadillac with the license plate number LVW710. When he ran the license number, he discovered that the license plate belonged to a different car, a Mazda registered to Hadley, and that the Cadillac's license plate had been revoked. At the suppression hearing, Hadley did not dispute that he had switched the license plates.

## D. The district court's ruling

Pursuant to the November 26 traffic stop and arrest, Hadley was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and for possession of marijuana in violation of 21 U.S.C. § 844(a). He moved to suppress the evidence found pursuant to the stop based on his allegation that the stop was made without a lawful basis, and the district court denied the motion after a hearing that lasted several days. In its ruling on the motion to suppress, the district court found that the officers had probable cause to stop the vehicle because the temporary license tag was expired. The district court noted that the "credibility of the witnesses was a major issue" in the case. It found that although there was some conflicting evidence, several pieces of evidence supported its finding that there was an expired temporary tag on the vehicle. It noted that the officers had recorded the expiration date of the temporary tag in their report and that the only way they could have determined that date was to have actually seen it on the tag. The district court also stated that its conclusion was supported by the testimony of the officers from the Baker Police Department, who found the hard license plate inside (rather than affixed to) the Magnum ten days after the traffic stop. It also found persuasive the fact that Hadley was subsequently cited for switching a license plate from one car to another. Hadley entered a conditional plea of guilty to the violation of 18 U.S.C. § 922(g)(1) and timely filed a notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over Hadley's appeal under 28 U.S.C. § 1291. In reviewing a district court's denial of a motion to suppress, "we review the district court's factual findings, including its credibility choices, for clear error and its legal conclusions de novo." United States v. Solis, 299 F.3d 420, 435 (5th Cir. 2002). In reviewing factual determinations, "we will not disturb findings of fact unless we are left with the definite and firm conviction that a mistake has

been made." United States v. Garza, 118 F.3d 278, 283 (5th Cir. 1997). In addition, "[w]e will not second guess the district court's factual findings as to the credibility of witnesses." Id. However, we may hold a trial court's decision to credit a witness's testimony erroneous on review if "[d]ocuments or objective evidence . . . contradict the witness' story; or the story itself [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." Anderson v. City of Bessemer City, 470 U.S. 564, 574-75 (1985).

### III. ANALYSIS

The sole issue on appeal is one of fact: whether Detectives Busbin and Thompson observed an expired temporary tag on the Magnum on November 26, 2004. If they observed an expired tag, it is undisputed that they had probable cause to stop the vehicle. See LA. REV. STAT. ANN. § 32:51 (2002) (providing that "[n]o person shall operate . . . any motor vehicle upon the highways of this state unless it is registered with the commissioner"); BATON ROUGE, LA., CITY MUNICIPAL CODE § 11:252 ("No person shall operate, or permit to be operated, any motor vehicle upon the streets of this city unless it has a current and properly displayed license plate in accordance with the laws of this state."); Whren v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). The officers concede that their only basis for stopping the Magnum was the expired tag; therefore, if there was no expired tag, there was no justification for the stop.

Hadley makes several arguments on appeal. First, he argues that the evidence shows that there was a hard plate on the car both before and after the traffic stop. He contends that according to Enterprise's usual practices, the hard plate would have been placed on the car before it was rented to him on November 8. He also argues that the hard license plate was on the car at the time of his arrest ten days after the traffic stop, pointing out that the Baker

Police Department officers recorded the hard license plate number in their report, that the Baker officers did not cite him for failure to display a proper license plate, that the license number was written on the tow slip, and that the tow truck driver, Halley, testified that his normal practice was to write a number on the tow slip only if he observed the plate on the car.

Hadley also contends that several facts cast doubt on the credibility of Detectives Busbin and Thompson: the differences in the officers' accounts of Hadley's attempt to hide the firearm magazine, the fact that the officers have previously stopped vehicles on questionable grounds and have written police reports with strikingly similar language, and the fact that although Officer Thompson testified that he called in the Magnum's VIN number, there is no evidence of such a call. He also contends that the officers could have come up with the expiration date of the temporary tag to write in their report by examining the registration, observing the sale date of September 16, and adding sixty days. He maintains that the fact that the officers did not write down the temporary tag number, seize it, or issue a citation for it casts doubt on their statement that there was an expired temporary tag.

Although Hadley does point to some evidence in support of his position, we find that there was stronger evidence supporting the district court's conclusion. First, Detectives Busbin and Thompson both testified that they observed an expired temporary tag, and they wrote down the expiration date in their police report. The most logical explanation for their having known the expiration date is that they actually observed it. Hadley's suggested version of events—that the officers observed a car with a valid license plate and decided to manufacture a pretext for stopping it by finding its registration, noting its date of sale, calculating the probable expiration date of a nonexistent temporary tag, and recording that date in their report—is extremely implausible. Had the officers wished to invent a false reason for the stop, they could have simply

claimed that Hadley had exceeded the speed limit or failed to signal. Second, the testimony of two Baker Police Department officers supports the district court's conclusion: they stated that ten days after the traffic stop, the license plate was not affixed to the Magnum. Hadley provides no reason to doubt that testimony, nor does he provide any explanation for why the hard plate would have been affixed to the car on November 26 but inside the car ten days later. The tow truck driver's initial affidavit stating that the hard plate was actually on the car when he towed it is undermined by his subsequent affidavit and testimony. The district court's decision to credit the Baker officers' testimony and not the tow truck driver's was reasonable. Third, Hadley's subsequent citation for switching license plates from one car to another provides some support for the possibility that even if the plate was on the car at some point, it might not have been present at the time of the traffic stop because Hadley could have switched the plate to another car.

None of Hadley's arguments attacking Detective Busbin's and Detective Thompson's credibility persuade us to second-guess the district court's determination that their testimony was credible. The differences in the officers' testimony regarding Hadley's attempt to hide the firearm magazine are extremely minor and are explained by the fact that Detective Thompson did not actually see the defendant's initial efforts to hide the magazine; he observed the magazine only after the defendant stood up. Hadley's contention that the officers have a pattern of making questionable traffic stops is undermined by the fact that in at least one of the two cases Hadley cites, the defendant's motion to suppress was ultimately denied because this court found the officers' actions legitimate. See United States v. Brown, 209 F. App'x. 450, 454-55 (5th Cir. 2006). In addition, the similarity in the language between different police reports generated by the officers does not suggest that the traffic stops reported were invalid; rather, it may be that the officers reasonably used prior reports as

templates to save time. Finally, the fact that the officers did not seize the temporary tag or issue a citation for it does not demonstrate that the stop was unreasonable. The officers arrested Hadley for serious drug and firearm offenses, and it was reasonable for them to focus on those offenses without citing him for the minor traffic violation that provided the basis for the stop. See, e.g., United States v. Colin, 928 F.2d 676, 678 (5th Cir. 1991) ("Given the subsequent discovery of a sawed-off shotgun and two outstanding arrest warrants, it is understandable that [the officer] lost interest in minor traffic violations.").

## IV. CONCLUSION

The district court carefully considered the credibility of several witnesses, examined the documentary evidence, and found that Detectives Thompson and Busbin had observed an expired temporary tag on the Magnum when they stopped it. That factual finding was not clearly erroneous. Therefore, we hold that the officers had probable cause to stop the vehicle, and the district court properly denied the motion to suppress. Accordingly, the judgment of the district court is AFFIRMED.