# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 23, 2013

Lyle W. Cayce
Clerk

No. 12-50190

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SELINA MARTINEZ,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 2:10-CR-684-1

Before STEWART, Chief Judge, and SMITH and WIENER,[*] Circuit Judges.

PER CURIAM:[**]

Defendant-Appellant Selina Martinez was strip searched at a United States Border Patrol immigration checkpoint, and she was found to be secreting heroin in a body cavity. Before the district court, Martinez moved to suppress the evidence and her subsequent confession. After a hearing, the district court denied the motion. Martinez then pleaded guilty to possession with the intent to distribute more than one hundred grams of heroin, reserving the right to

---

[*] Judge Wiener concurs in the judgment only.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50190

appeal the denial of her motion to suppress.  The district court sentenced Martinez to sixty-three months of imprisonment and five years of supervised release.  On appeal, Martinez argues that the evidence obtained from the search and her subsequent confession should be suppressed.  We disagree, and therefore we AFFIRM.

## I.  BACKGROUND

**A.    Facts**

Around late March or early April 2010, Martinez traveled through the United States Border Patrol Eagle Pass immigration checkpoint ("Eagle Pass checkpoint").  Border Patrol Agent Renee Luna noted that Martinez appeared intoxicated and incoherent.  Luna conducted a records check on Martinez, which reported a notation that she was involved in a drug smuggling organization that utilized body carriers.  When asked, Martinez exited her vehicle and consented to a patdown search, which revealed nothing.

About one or two weeks later, on April 8, 2010, Martinez was again traveling in a commercial passenger van that arrived at the Eagle Pass checkpoint.  The van was referred to a secondary inspection, and Luna opened the rear doors of the vehicle.  Raul Cantu, who was sitting in the rear seat, presented his driver's license to Luna and stated that he was an American citizen.  Cantu identified Martinez, who was sitting to his left, as his girlfriend.  When Luna turned his attention to Martinez, she did not make eye contact with him but informed him that she was a United States citizen and provided her driver's license upon request.

Cantu and Martinez told Luna that they were traveling from Eagle Pass to San Antonio, where they planned to stay for a few days.  However, neither was traveling with luggage.  Luna recalled that he previously had encountered Martinez at the checkpoint within the last few weeks.  He then ran a records check on Martinez, which returned a notation that Cantu might use Martinez

2

No. 12-50190

as a body carrier for drugs and that "100 percent a check should be conducted" if Cantu and Martinez were encountered together.  Luna then asked Cantu and Martinez if they would exit the vehicle for questioning, and both agreed.

When Luna questioned Martinez, she answered with confidence and maintained eye contact.  However, when he asked Martinez if she had ever transported narcotics, she broke eye contact.  Consequently, Luna asked Martinez if she would consent to a patdown search by a female border patrol agent.  Martinez agreed.

A female agent was not in the immediate vicinity, so Martinez had to wait for approximately thirty minutes in a common room with three uniformed and armed agents.  While she was waiting, the driver of the commercial van requested to leave.  Luna asked Cantu and Martinez if it would be alright if the van left, and both agreed.  The van then left.

When Border Patrol Agent Juana Sedeno arrived to conduct the patdown search, Luna informed her that Martinez had consented to the patdown. Sedeno, who was armed and uniformed, escorted Martinez into the checkpoint's interrogation room, which was configured like a holding cell and located off of the common room.  Upon Sedeno's request, Martinez handed her jacket to Sedeno. After inspecting the jacket and finding nothing, Sedeno asked Martinez to put her hands on the wall while she conducted a patdown.  Starting from Martinez's shoulders, Sedeno conducted a thorough patdown search. The search revealed nothing.

Sedeno then asked Martinez to remove her pants, and Martinez complied. Sedeno checked the inseams of the pants but did not find anything.  Then, Sedeno asked Martinez to remove her underwear.  Martinez stated that she did not want to remove her underwear and refused to do so.[1]  She also informed

---

[1] Here, the chronology of events becomes somewhat confusing because Sedeno's testimony at the suppression hearing was not particularly clear.

3

Sedeno that she was menstruating and had a tampon inserted. Sedeno asked Martinez if she would remove the tampon and offered a replacement to her. Martinez refused twice. However, Martinez then pulled her underwear down and squatted at Sedeno's request. When Martinez squatted, Sedeno was able to see a string.

Martinez then stood and put her pants back on. At that point, Sedeno asked to see the tampon string again. Martinez pulled her pants back down to her knees. When Sedeno saw the string again, she saw that it was not a tampon and informed Martinez of her suspicion. Martinez conceded that it was not a tampon. Sedeno asked Martinez to remove it. Martinez initially requested to be taken to a doctor but then quickly removed the item, which was a condom containing heroin. Martinez was then informed of her *Miranda* rights, and she provided a statement wherein she admitted to transporting heroin.

## B.    Procedural History

Martinez filed a motion to suppress the evidence obtained from the search, as well as all evidence and statements derived from the search. The district court held an evidentiary hearing and then issued a written order denying Martinez's motion. The district court found that the search of Martinez was conducted pursuant to reasonable suspicion and that Martinez voluntarily consented to "a search of her person." Therefore, the district court denied Martinez's motion to suppress the evidence and post-arrest statement.

Pursuant to a plea agreement, Martinez pleaded guilty to the indictment, which charged her with the knowing or intentional possession with intent to distribute one hundred or more grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). In her plea agreement, Martinez reserved the right to appeal the denial of her motion to suppress. The district court sentenced Martinez to sixty-three months of imprisonment, to be followed by five years of supervised release. This appeal followed.

No. 12-50190

On appeal, Martinez raises two issues.  First, she alleges that the district court erroneously applied a "reasonable suspicion" standard instead of the proper probable cause standard, and that there was no probable cause for the search.[2]  Second, Martinez argues that the district court erred in finding she had voluntarily consented to the search and therefore, that the evidence and subsequent confession must be suppressed.  We address the latter argument below.

## II.  VOLUNTARY CONSENT

The Government argues, and the district court found, that Martinez voluntarily consented to the search.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").  Martinez disputes that her consent was voluntary and argues that the district court clearly erred in so deciding.

## A.    Standard of Review

"The voluntariness of consent is a question of fact to be determined from a totality of the circumstances[.]" *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002) (citation and internal quotation marks omitted).  We review the district court's finding of voluntariness for clear error.  *Id.* (citation omitted). "Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses." *Id.* (citation and internal quotation marks omitted).  Moreover, because the district court makes credibility determinations, we assume that the district court

---

[2] The Government concedes there was no probable cause.  It does not press for the application of a reasonable suspicion standard and, instead, acknowledges that this case turns on whether Martinez consented to the search.  As we have determined that Martinez voluntarily consented to the search, we need not address this alternate holding by the district court.

5

accepted the Government witnesses' testimony where they conflicted with Martinez's affidavit. *See United States v. Smith*, 543 F.2d 1141, 1145 (5th Cir. 1976) (citation omitted).

The district court's "ultimate conclusion as to the constitutionality of the law enforcement action [is reviewed] de novo." *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995) (citation and internal quotation marks omitted). We consider all of the evidence in the light most favorable to the prevailing party, here the Government. *United States v. Ellis*, 330 F.3d 677, 679 (5th Cir. 2003).

## B. Discussion

"In order to satisfy the consent exception [to the Fourth Amendment's warrant and probable cause requirement], the [G]overnment must establish that consent to search was freely and voluntarily given and that the individual who gave consent had authority to do so." *Solis*, 299 F.3d at 436 (citation and internal quotation marks omitted). The Government "must prove by a preponderance of the evidence that consent was voluntary and effective." *Id.* (citation and internal quotation marks omitted). The prosecutor's "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Jenkins*, 46 F.3d at 451 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)). Consent may not be "the product of duress or coercion, express or implied . . . ." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980).

In evaluating whether consent was voluntary, we consider six factors, "all of which are relevant, but no one of which is dispositive or controlling." *Solis*, 299 F.3d at 436 (citation omitted). These factors are:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* at 436 n.21 (citation and internal quotation marks omitted). The district court's order identified the six factors, but it did not explicitly analyze them before reaching its conclusion that Martinez's consent was voluntary.

As our inquiry is based on a totality of the circumstances, our test as to whether consent was voluntary has no bright lines. The totality of the circumstances before us shows that Martinez's consent was voluntarily given.

### 1. *Voluntariness of the Defendant's Custodial Status*

Cases holding consent to be voluntary often focus on the suspect's ability to end her encounter with law enforcement officers. *See, e.g., United States v. Sanchez-Pena*, 336 F.3d 431, 443 (5th Cir. 2003) (emphasizing that consent to search was not obtained until officer had signaled suspect was free to leave); *United States v. Boukater*, 409 F.2d 537, 539 (5th Cir. 1969) (noting, in holding that suspect's consent to search his briefcase was voluntary, that agents had given suspect a full *Miranda* warning and told him he was free to leave before suspect consented); *see also* 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 8.2(b) (2004) ("[D]ecisions holding the consent to have been voluntary . . . stress the fact that the consenting party was not under arrest and free to leave or was in familiar surroundings at the time.").

In her brief on appeal, Martinez conceded that her custodial status was "arguably voluntary." We agree. The evidence in the record shows that Martinez voluntarily exited the passenger van and was not under arrest at any time during her search. Following from the district court's factual findings and credibility determinations, there is no evidence that Martinez asked to leave the room in which Sedeno was conducting the search. In short, we find the circumstances of this case similar to those in *United States v. Galberth*, 846 F.2d 983, 985, 987 (5th Cir. 1988), where we upheld the voluntary nature of the

suspect's consent where the suspect consented to a patdown search in a public area of an airport and the resulting search occurred in a public restroom.

### 2.    *Presence of Coercive Police Procedures*

Because the district court based its finding of consent on the oral testimony at a suppression hearing, we give particular deference to the district court's credibility determinations. *See Solis*, 299 F.3d at 436. Here, the district court found the border patrol agents credible, and so we have no evidence before us that the police procedures used were coercive. Although Martinez was subject to search by an armed and uniformed female border patrol agent, we have previously held that the presence of uniformed officers does not create a coercive environment. *See, e.g., United States v. Jones*, 475 F.2d 723, 724, 730 (5th Cir. 1973) (holding that defendant's statement was not coerced even though approximately ten FBI agents were present during the defendant's arrest and inculpatory statement); *see also United States v. Martinez (Anthony Gilbert Martinez)*, 410 F. App'x 759, 764 (5th Cir. 2011) (unpublished) ("[T]he mere presence of armed officers does not render a situation coercive. The officers were not pointing their firearms at anyone and were not threatening Martinez or shouting.").

Moreover, there is no evidence that Sedeno or any other agent used "intimidation, threats, [or] abuse (physical or psychological)" to coerce Martinez into revealing the heroin she had secreted. *See Jones*, 475 F.2d at 730. Additionally, Sedeno's search of Martinez lasted only ten minutes. Such a short search "negates any possibility that the police may have worn down the defendant's resolve through persistence." *United States v. Cooper*, 43 F.3d 140, 147 (5th Cir. 1995) (holding that a five-minute search was not coercive); *see also United States v. Santiago*, 410 F.3d 193, 199-200 (5th Cir. 2005) (concluding that the district court's determination that the suspect had voluntarily consented to a forty-five-minute search was not error).

8

Finally, there is no evidence that Sedeno badgered Martinez into consenting to the search. Sedeno did not repeatedly ask Martinez to perform any actions that she refused to perform, but instead made different requests when Martinez declined to act. Eventually, Martinez complied with all, or nearly all, of Sedeno's requests. There is no indication from Sedeno's testimony, which the district court found credible, that Sedeno persisted asking Martinez "in a manner conveying that she would not take 'No' for an answer." 4 Wayne LeFave, *supra*, at § 8.2 (2011-12 Supp.).

### 3.      *Extent and Level of Defendant's Cooperation with the Police*

Martinez argues that she was not cooperative because she repeatedly refused to comply with Sedeno's strip search requests. She argues that at most, she acquiesced to Sedeno's demands. We disagree. This is not a case where Martinez remained silent, and the officer assumed that her silence indicated consent. Rather, Martinez affirmatively acted in compliance with Sedeno's requests. *Cf. United States v. Jaras*, 86 F.3d 383, 390 (5th Cir. 1996) (holding that where an officer did not seek permission to search, consent could not be reasonably implied from suspect's silence and failure to object to the officer's search of his property). Here, Martinez's actions in disrobing and squatting indicate her consent, not mere acquiescence, to Sedeno's requests. *See, e.g, Cooper*, 43 F.3d at 148 (noting that a suspect demonstrated cooperation when he voluntarily stood for a patdown search).

### 4.      *Defendant's Awareness of Her Right to Refuse to Consent*

The Government concedes that the record contains no information about whether Martinez was advised that she had the right to refuse consent to the search. Thus, this factor weighs in Martinez's favor. However, it is not dispositive that a defendant was not aware of her right to withhold consent. *See United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988) (citations and internal quotation marks omitted) (upholding district court's denial of motion to

suppress evidence even though the defendant was not informed of his right to refuse consent).

### 5.     *Intelligence and Education*

Martinez contends that she did not have knowledge about her rights regarding searches.  The facts show that Martinez was 20 years old at the time of the search, had completed 10 years of schooling, and had been arrested several times.  Similar characteristics have been held to establish voluntary consent. *See Mendenhall*, 446 U.S. at 558 (noting 22-year old suspect with an eleventh grade education was "plainly capable of knowing consent").

### 6.     *Defendant's Belief that No Incriminating Evidence Will Be Found*

Martinez argues that she knew that the strip search would reveal she was carrying heroin.  While she concedes that this knowledge does not necessarily exclude the possibility that she would consent to the search, she argues that "common sense" suggests that this knowledge makes it less likely that she would consent.

However, "the question is not whether [Martinez] acted in her ultimate self-interest, but whether she acted voluntarily." *Id.* at 559.  "[I]t is arguable that [Martinez] may have thought that she was acting in her self-interest, by voluntarily cooperating with the officers in the hope of receiving more lenient treatment." *Id.* at 559 n.7.  Alternatively, it is plausible that Martinez cooperated because she did not believe the heroin would be discovered.  While it is not clear that this factor weighs in the Government's favor, neither is it clear that this factor weighs in Martinez's favor.

In summary, as we must weigh the evidence in the Government's favor, only one of the factors—whether Martinez was informed of her right to refuse consent—points convincingly in favor of Martinez, and that factor is not dispositive.  Accordingly, we hold that the district court did not clearly err when

No. 12-50190

it determined that Martinez voluntarily participated in and gave consent to the strip search.  Consequently, the district court did not err in refusing to suppress the evidence from the search or Martinez's subsequent confession.

### III.  CONCLUSION

As we must give deference to the district court's credibility determinations and consider all evidence in the light most favorable to the Government, we conclude, under the totality of the circumstances, that Martinez's search was validated by voluntary consent.  Accordingly, we AFFIRM the district court's judgment.